SMITH, Ex parte. See Case No. 2,784.

SMITH, Ex parte. See Case No. 12,993.

SMITH, In re. See Case No. 1,868.

———

## Case No. 12,970.

### In re SMITH.

[Nowhere reported; opinion not now accessible.]

———

## Case No. 12,971.

### In re SMITH.

[2 Ben. 113; [1] 1 N. B. R. 243 (Quarto, 25).]

District Court, S. D. New York. Jan., 1868.

BANKRUPTCY — CHOICE OF ASSIGNEE — DUTY OF REGISTER—CHANGE OF REGISTER—NOTICE OF OBJECTION TO PROOF OF DEBT.

1. It is incumbent upon registers in no manner to interfere with or influence, directly or indirectly, the choice of an assignee by creditors.

[Cited in Re Wetmore, Case No. 17,466.]

2. The policy of the bankruptcy act [of 1867 (14 Stat. 517)] is to give to the creditors, in the first instance, a free, deliberate, unbiased choice of the assignee.

3. Where creditors applied to have the proceedings sent before another register than the one to whom the case had been referred, on the ground that the register had interfered in the choice of an assignee, the court granted the application, without, however, questioning the motives of the register in what he had done, but because the creditors, who had made affidavits in support of the application, and their

———

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

attorney, ought not to be compelled by the court, after all that had transpired, to continue the proceedings before the register in question.

4. Where creditors, who had proved their debts, served on the register a notice protesting against the proof of any claims against the estate by certain other creditors, and requesting to be notified if any such claims were tendered for proof, *held*, that they had the right to serve such a notice.

[In the matter of John Ogden Smith, a bankrupt.]

[2] [Mr. G. De Forest Lord moved to show cause why this case should not be removed from the hands of Mr. John Fitch, one of the registers in bankruptcy, at present having charge of the matter, and sent to some other register. Mr. Lord, in support of the motion, read several affidavits setting forth the gravamen of the complaint against the register; that Mr. Fitch, to whom the case of John Ogden Smith, a bankrupt, was referred, improperly sought by misrepresentation to get one Isaac M. Andruss appointed assignee for the estate of the bankrupt. Mr. Lord, as counsel for one of the creditors, the firm of Halleck & Robbins, having read the affidavits of several creditors and counsel of creditors of the estate of the bankrupt, was followed by the defendant, Mr. Fitch, who read counter affidavits of persons who denied the representations of Mr. Lord as set forth in his affidavits, both as to occurrences and dates. Mr. Lord then proceeded to address the court. He said it was important that the bankrupt act should be free from all abuse, and that the register should not descend from the bench to take part in the contests going on between the creditors and the bankrupt. It was desirable that a register should have no ends to serve, no axe to grind, no friends to push forward. He (Mr. Lord) would expect that from every register before whom he appeared. There was danger from the appointment of bad assignees, and good would come from the appointment of good assignees. The assignee was to take the place of the bankrupt himself, to take charge of the property, to deal with all claims against the estate, and make the most of it for the benefit of all the creditors. It depended on the fidelity of the assignee whether there should be a dividend at all, or whether it should be large or small. This was the essence of the bankrupt act, and it was all important. The choice of an assignee should be left to the unbiased choice of the creditors. Any interference by the register with the appointment of an assignee was a gross prostitution of his official position, and was introducing into the bankrupt act a practice full of evil and danger. He stated in strong language that this was exactly the case he had to complain of in regard to Mr. Fitch, who, he said, had solicited all the creditors who had proved their debts to vote for Mr. Andruss as assignee. He therefore asked the court to send this case

before some other register, who would not have some friend to push forward as assignee. He might have adopted another course by going to Mr. Fitch, and telling him he intended to remove the case to another register if he did not cease his interference with the assignee. But the court could see that if he had adopted that course he (Mr. Lord) would have stood in the position of one who had thwarted Mr. Fitch in the carrying out of a cherished purpose. He (Mr. Lord) complained that in the presence of his friends, and among many of the members with whom he was accustomed to practice, Mr. Fitch had put an indignity upon him and done him all the harm he could, and therefore he wished that this case should be taken from the hands of Mr. Fitch.

[Mr. Fitch replied that he had no personal feeling against Mr. Lord, whom he did not know at the time he came before him to be the son of Hon. Daniel Lord. But he did complain that Mr. Lord had attempted to get his own assignee appointed, and he would always fail to get him (Mr. Fitch) to swerve from the due and faithful discharge of his duties. He would always treat every person and every creditor who came before him with courtesy. He did not reprimand Mr. Lord because he had applied to his honor to show cause, but because he (Mr. Lord) had applied to him to get his own assignee appointed in the interest of his own clients.

[Mr. Lord remarked that the statement of Mr. Fitch that he had applied for the appointment of an assignee was entirely false. He (Mr. Lord) had never mentioned the subject at all until it was brought to his notice by Mr. Fitch mentioning to him the name of Mr. Andruss.

[Mr. Parsons said that, representing creditors as he did, he wished to state that they had no objection to leave the case in the hands of Mr. Fitch. They were sure they would get justice at his hands, and that was all they wanted.

[Mr. Courson, representing creditors to the amount of $4,000, said that in order to have the proper notice given to creditors, it would be necessary to have an early decision in the matter.] [2]

G. D. Lord, for creditors.
The Register, in pro. per.

BLATCHFORD, District Judge. This is a case of involuntary bankruptcy, in which an adjudication of bankruptcy was made by the court on the 17th of December, 1867. The order of adjudication referred the case to one of the registers in bankruptcy of the court, by name, to take such proceedings thereon as are required by the act. On the same day a warrant was issued, which appointed the 15th day of January, 1868, at the office of such register, as the day for the meeting of the creditors of the bankrupt to

---

[2] [From 1 N. B. R. 243 (Quarto, 25).]       [2] [From 1 N. B. R. 243 (Quarto, 25).]

prove their debts and choose one or more assignees of his estate. An application is now made to the court, on the part of Hallett & Robbins, creditors of the bankrupt, who have proved their debt against his estate, to vacate so much of the order of adjudication as refers the case to the register designated in the order, and to refer it to some other register, without prejudice to proceedings already had in the case. The ground on which this application is based is, that the register has improperly interfered in the matter of the choice of an assignee of the estate of the bankrupt. Uncontradicted testimony shows that, on several occasions, on several different days, from two to five days prior to the day appointed for the first meeting of creditors and for the choice of an assignee, when creditors attended in person at the office of the register for the purpose of making oath before him to their proofs of debt, he presented, or caused to be presented, to them, a printed blank of form No. 15, with the name of a person inserted in it as assignee of the bankrupt's estate, and requested them, either directly or through a clerk in his office, to sign such blank form, and vote for such person as assignee. It does not appear that such person was known to or of by any of such creditors, and it does appear that several of them did not know him or know of him. The register's reply to these allegations consists in a vindication of his motives in soliciting votes for the assignee, and in testimony as to the fitness of the person designated, and in attacks upon the character and motives of the attorney for Hallett & Robbins, who are also the petitioning creditors.

Whatever were the motives of the register, and however well fitted for the position the assignee of his choice was, his interference in the matter, in the manner stated, was wholly unwarrantable and improper. The register is a part of the court, his duties are of a judicial character, and his action should, under all circumstances, be free from reproach and above all suspicion of interest or partisanship. The fourth section of the bankruptcy act provides, that "no register shall be of counsel or attorney, either in or out of court, in any suit or matter pending in bankruptcy, in either the circuit or district court of his district, nor in an appeal therefrom, nor shall he be executor, administrator, guardian, commissioner, appraiser, divider, or assignee of or upon any estate within the jurisdiction of either of said courts of bankruptcy, nor be interested in the fees or emoluments arising from either of said trusts." This provision indicates the spirit of judicial impartiality which the law expects will be exhibited by every register in the discharge of his important duties. With the choice of an assignee by the creditors he has nothing to do, except to preside at the meeting at which the choice is made. It is not necessary he should appprove or confirm the choice; for, although such an approval by the register is appended to form No. 15, nothing of the kind is required by the statute. The election is subject to the approval of the judge; and, although it is the duty of the register, in transmitting the result of an election to the judge, for his action thereon, to make known any objection which exists to an approval of the choice, yet, beyond this, the register has nothing to do with either the election or appointment of an assignee, unless there is a failure to choose, or a non-acceptance by the person chosen, and then, in certain cases, the register can appoint an assignee. In regard to the choice of an assignee, the policy of the bankruptcy act, as clearly shown in its provisions, is, to give to the creditors of a bankrupt the free, deliberate, unbiased choice, in the first instance, of the person who is to take the assets and manage them. This is a feature which did not exist in any former bankruptcy law of the United States, and was adopted from the English system. The importance of this policy has been uniformly recognized by this court, and it has not failed to approve all elections of assignees by creditors, unless something was placed before it to show that the choice was not a proper one. It is especially incumbent upon registers in no manner to interfere with, or influence, either directly or indirectly, the choice of an assignee by creditors. The action of a register should, in all things, be that of strict impartiality, not only in fact but in appearance, and he should not present the semblance of having any interest or bias in favor of or against any particular person as assignee, any more than of being prejudiced for or against the bankrupt, or for or against any creditor, in any proceeding. Any other course will lead, if not to abuses, to the suspicion of them, and will impair the usefulness of the registers and derange the harmonious working of the system.

It might not be proper, in this case, to apply the remedy asked for, of transferring the case to another register, were it not that it is manifest, from the affidavits in the matter, and from what transpired in open court, on the argument of the motion, that it will be a judicious exercise of discretion to send the case to another register. This I do without at all meaning to question the motives of the register in soliciting votes for the assignee designated by him. I do it because the creditors who have made affidavits in support of this motion, and the attorney for the petitioning creditors, ought not to be compelled by the court, after all that has transpired, to continue the proceedings in this case before the register to whom it was referred.

Some animadversion was made by the register upon the fact that the attorney for the petitioning creditors served upon him, on the 10th of January, 1868, a notice stat-

ing that such creditors protested against the proof of any claims against the estate by four several creditors, naming them, and opposed their claims on the ground that they were not entitled either to prove their debts or to vote for or be eligible as assignees, and requesting that such attorney might be immediately notified if any of such persons should tender their claims for proof. This notice was served in the exercise of an undoubted right. Section 23 of the act provides, that "when a claim is presented for proof before the election of the assignee. and the judge entertains doubts of its validity, or of the right of the creditor to prove it, and is of opinion that such validity or right ought to be investigated by the assignee, he may postpone the proof of the claim until the assignee is chosen." Rule 6 of this court gives to the register the same power of postponing the proof of a claim. The last clause of section 22 of the act provides for the mode of investigating a claim, with a view to its rejection if it shall be shown to be founded in fraud, illegality, or mistake. The notice in question served on the register seems to have been a proper notice preliminary to the exhibition to the register of grounds for the exercise of his power of postponement in regard to the claims specified.

[See Case No. 12,984.]