In re LEWENSOHN.

(District Court, S. D. New York. December 27, 1899.)

1. BANKRUPTCY—ELECTION OF TRUSTEE—FILLING VACANCY.
    Under Bankr. Act. 1898, § 44, providing that the creditors of a bankrupt shall appoint a trustee "at their first meeting after the adjudication, * * * or if there is a vacancy in the office of trustee," if a person chosen as trustee by the creditors is disapproved by the court, or declines to act, or fails to qualify, there is a vacancy in the office, and a new election must be had by the creditors, if that is practicable. An appointment cannot be made by the court unless the creditors neglect or fail to make a choice upon opportunity afforded them, when practicable, so to do.

**2.** SAME—CONSENT OF PROPOSED TRUSTEE.

Creditors of a bankrupt, before the meeting at which a trustee is to be chosen, should obtain the consent of the person whom they propose to elect to that office, if practicable, in order to avoid the necessity of a new meeting of creditors, caused by his declining to act.

**3.** SAME—OBJECTIONS—ADJOURNMENT OF MEETING.

When, at a meeting of creditors of a bankrupt, objections are presented against the person chosen as trustee, and are taken under advisement by the referee, the meeting should be adjourned to a future day, when a new election may be had in case the objections are sustained and the appointment disapproved.

**4.** SAME—QUALIFICATIONS OF TRUSTEE.

When one of the bankrupt's creditors has been chosen as trustee by the unanimous vote of a large body of creditors present at the meeting, and nothing appears to impugn his competency or integrity, his election will not be set aside by the court, at the instance of the bankrupt, on allegations by the latter of hostility and bias against him on the part of such trustee, especially where such animosity, if it exists, may have been caused by the bankrupt's own fault.

In Bankruptcy. On motion to set aside an order of the referee in bankruptcy disapproving the trustee chosen by creditors and appointing another trustee.

Blumenstiel & Hirsch, for the motion.

Meyers, Goldsmith & Bronner, opposed.

BROWN, District Judge. At the first meeting of creditors in the above proceeding, on December 5th, all who had proved their claims being 38 in number and representing debts to the amount of about $150,000, voted for Francis M. Bacon, Jr., of this city as trustee. His firm of Bacon & Co. was one of the four largest creditors, having a claim of $11,450. On December 12th, to which day the meeting was adjourned, objections were for the first time made on behalf of the bankrupt, and the referee was asked to disapprove of the trustee elected on the ground that he was not competent, impartial and unbiased. The matter was taken under consideration by the referee, and the meeting adjourned without day. On the next day the referee disapproved of the trustee elected on the ground above stated, and appointed another trustee. A motion is now made to set aside this appointment. The subject has been argued at length, both as respects the right of the referee to appoint a trustee upon such a disapproval, as well as upon the sufficiency of the objections raised against the confirmation of the trustee chosen by the creditors. Substantially the same question has been previously presented to me as to the referee's power to appoint, when an elected trustee declines to serve, or fails to qualify. The same considerations apply to all these cases, and I shall treat them as one.

1. Section 44 of the bankrupt act provides that the creditors shall appoint one or more trustees

"At their first meeting after the adjudication, or after a vacancy has occurred in the office of trustee, * * * or if there is a vacancy in the office of trustee":

and that if the creditors do not appoint, the court shall do so.

Whatever may be the reserved or implied power of courts of bankruptcy under the last paragraph of section 2, to appoint a trustee

98 F.—37

when necessary, resort to such an implied power cannot ordinarily be had in cases where the statute itself designates a different mode of appointment; and in doubtful cases the general intent of the law, as gathered from its express provisions, should be observed so far as possible.

If upon the referee's disapproval of an elected trustee, or upon the trustee's refusal to accept, or failure to qualify, "there is a vacancy in the office of trustee," the case falls within one of the clauses of section 44 above cited, and a further election by creditors must be had where, as in this case, such an election is practicable; and in my opinion these cases do fall within both the letter and the spirit of section 44. See Coll. Bankr. 246; Loveland, Bankr. p. 214, § 107; Id. p. 270, § 142.

In the case of In re Smith, 1 N. B. R. 243, 247, 2 Ben. 113, 22 Fed. Cas. 381, Blatchford, J., says of the act of 1867,

"The policy of the bankrupt act, as clearly shown in its provisions, is to give to the creditors of the bankrupt the free, deliberate, unbiased choice, in the first instance, of the person who is to take the assets and manage them. The importance of this policy has been uniformly recognized by this court. It is especially incumbent upon registers in no manner to interfere with or influence either directly or indirectly the choice of an assignee by creditors."

This general intent is still more strongly manifested by the act of 1898, since the latter act has largely curtailed the former power of the court to appoint, and correspondingly extended the right of creditors. Section 13 of the act of 1867 (section 5034, Rev. St.) provides for an election by creditors at the first meeting only, and authorizes the court to fill all vacancies; at the same time it expressly treats a failure to qualify as a case of "vacancy." The act of 1898, however, provides for an election by creditors not only at their first meeting, but in five other contingencies, viz.: (1) "After a vacancy has occurred in the office of trustee;" (2) after an estate has been reopened; (3) after a composition has been set aside; (4) or a discharge revoked; or (5) "if there is a vacancy in the office of trustee." These clauses seem designed to cover all situations.

The authority of the court to fill vacancies, given by the act of 1867 is wholly omitted; no such authority is anywhere to be found in the act of 1898; while section 2, par. 17, in defining the jurisdiction of the court in this regard, authorizes it to appoint trustees only

"Pursuant to the recommendation of creditors, or when they neglect to recommend the appointment of trustees * * * and upon complaints of creditors, remove trustees for cause upon hearings and after notices to them."

From what the act provides, as well as from what it omits, therefore, the necessary inference is that it designs to give creditors in all cases an opportunity to choose the trustee, and to authorize the court to appoint only where they neglect or fail to do so. This was one of the merits of the act that was urged upon its passage. Coll. Bankr. p. 33. The general orders are framed on this view; No. 14 (32 C. C. A. xviii., 89 Fed. vii.) forbidding any official trustee, or trustee for any class of cases, and No. 25 (32 C. C. A. xxvi., 89 Fed. xi.) authorizing a meeting of creditors to be called whenever there is a "vacancy in the office of trustee." The particular

language of the two clauses of section 44 as respects "vacancies" shows the same intent. The first clause, "after a vacancy has occurred," imports that the office was previously filled; but the revisers apparently not being satisfied with this limitation, the second clause was added in order to secure an opportunity of choice to creditors in every case "where there is a vacancy," i. e. where the office, from whatever cause, is unfilled. For the word "vacancy" alone does not import that the office has been previously filled. Bouv. Law Dict. defines the word as

"A place which is empty. The term is principally applied to cases where the office is not filled."

In the Century Dictionary it is defined,

"(d) An unoccupied or unfilled post, position or office."

So long as the office is unfilled, therefore, "there is a vacancy," whether previously filled or not, and this second clause as respects vacancies, therefore, applies. If this clause were not broader than the first, it would be mere surplusage. The two clauses indicate the composite origin of the text; and the latter in effect supersedes the former. That the word "vacancy" is used in the broad sense above stated, is further shown not only by the act of 1867 (section 5034), which provides that if the assignee chosen fails to accept the trust the judge or register may fill the vacancy, (that is, a "vacancy" though the office had not been previously filled); but section 50 of the present act, after requiring a bond from the trustee before entering upon the performance of his official duties (subdivision b) provides (subdivision k) that

"If any trustee fail to give bond he shall be deemed to have declined his appointment and such failure shall create a vacancy in his office."

"There is a vacancy," therefore, within the second clause of section 44 relating to vacancies, whenever the trustee chosen refuses to accept, or fails to qualify, or is disapproved by the court, whether the office has been previously filled or not; and in such cases the court cannot appoint until after opportunity is afforded creditors for a new election, where that is practicable.

In order to prevent the delay incident to the call of a new meeting of creditors under general order 25, it is advisable that the consent of the proposed trustee should be obtained if practicable before his election; and if objections to a trustee elected are reserved by the referee, the meeting should be adjourned to a future day when a new election can be had, in case the previous choice is disapproved.

2. The objections to Mr. Bacon seem to me insufficient for setting aside the creditors' unanimous choice. His firm was one of the four largest creditors, and he was unanimously elected by a large body who had proved their claims. These objections were stated by the bankrupt's counsel in an address to the referee at an adjourned meeting, and in the reply of the creditors' counsel they were claimed to be incompetent and frivolous. No notes were then taken; the meeting was adjourned without day, and the referee took the objections under advisement. On the next day the bank-

rupt's attorney submitted to the referee an affidavit purporting to state the objections made the day before, which is annexed to the referee's report. The referee received this affidavit, and on the same day entered his disapproval of Mr. Bacon, and the appointment of another trustee, without notice to the other side of the affidavit filed, or giving opportunity to reply to it. Without such notice and opportunity of reply, I think the affidavit should not have been received.

The charges made in the affidavit are that Mr. Bacon had a hostile animus towards the bankrupt; that he had caused him to be dogged by private detectives; had received from them false reports, which he insisted upon though disproved; that he would not and could not be a disinterested person, maintaining the interest of the bankrupt and his welfare and personal liberty; that he had obstructed the expected composition, and being proposed as a trustee under the composition, that he had claimed compensation if he acted as such.

The latter charge not only states no improper claim, but is foreign to the subject in hand. The alleged hostile animus seems based only upon the watch by detectives on the bankrupt's transactions in his business, and some indefinite threats based upon their reports; and from the other papers submitted in the bankrupt's own behalf, it appears that the watch, animus and threats complained of, were mostly, if not wholly, on the part, not of Mr. Bacon individually, but of the credit superintendent of Mr. Bacon's firm, who might naturally enough be indignant at having been led into a credit of over $11,000, and afterwards finding unexplained discrepancies to the amount of above $175,000, in assets, as compared with the bankrupt's statements less than six months before.

If it is theoretically possible that such a state of hostility might exist between the bankrupt and the person elected as to make him an improper person to act as trustee (In re McGlynn, 2 Low. 127, 16 Fed. Cas. 122) it should be at least clear that this bias was not through the bankrupt's own fault. Under the statute (section 45), incompetency for the performance of their duties, and nonresidence, are the only grounds of disapproval; and with these, mere bias or hostility to the bankrupt, except in extreme cases, can have little to do. The choice of creditors ought not to be interfered with on slight grounds. Robs. Bankr. 395; Coll. Bankr. 247. In the case of In re Funkenstein, 9 Fed. Cas. 1004, Hoffman, J., says:

"Until the court has before it clear and positive evidence that the parties nominated are commercially dishonest or disreputable in the commercial community, it seems to me it would be my duty to recommend their approval."

In the case of In re Barrett, 2 N. B. R. 533, 2 Fed. Cas. 909, Jackson, J., observes:

"What then is cause sufficient to justify the judge in withholding his assent? Manifestly it must be for want of capacity or integrity in the party selected."

To the same effect are In re Grant, 2 N. B. R. 106, 10 Fed. Cas. 973; In re Clairmont, 1 N. B. R. 276, 5 Fed. Cas. 810.

The cases cited as to the desirableness of amicable relations (Mc-

Pherson v. Cox, 96 U. S. 404, 24 L. Ed. 746; May v. May, 167 U. S. 310, 17 Sup. Ct. 824, 42 L. Ed. 179) refer to the relations between the trustee and his beneficiaries. In bankruptcy, however, the beneficiaries are not the bankrupt, but the creditors. For that reason the law gives to them alone the choice of trustee; the bankrupt has no part in it, because presumably he has no interest in it; and it is scarcely consistent with that situation, that the bankrupt who has no voice in the election and whose business dealings may have been most reprehensible, should be allowed to defeat the creditors' unanimous choice on the ground that the trustee elected was unfriendly to himself—an objection which would naturally be strongest when the bankrupt's own demerits were greatest.

The trustee's duties are administrative, not judicial. It is not his special duty "to hold an even hand or an unbiased mind" towards the bankrupt, but to make the most possible out of the assets; and in the performance of this duty, mere bias or unfriendliness towards the bankrupt must be rarely, if ever, material. Considering the number and frequency of fraudulent bankruptcies in the past, a zealous watch and scrutiny of an insolvent's transactions, cannot be looked upon as a demerit, or as indicative of a lack of "competency" in a trustee. And unfounded suspicions and prejudices even, may be met by the honest merchant without fear.

If objections of the kind here presented were to be readily entertained, and investigations were to be entered into by referees as might be necessary in order to ascertain the degree, or the cause, or the justification of the alleged bias, it is manifest that great embarrassment and prejudicial delays in the choice of a trustee might often be created at the mere option of the bankrupt, such as the law could never have contemplated; and at the same time, by the adoption of false tests, the most competent and effective trustee might be ruled out.

From the papers presented, Mr. Bacon appears to be a man of high character and mercantile standing, and specially competent for the office of trustee. The unanimous choice of creditors imports this. No question is made in these regards; and when such a man is unanimously elected, charges by the bankrupt of bias, interest or animosity ought not, I think, to be entertained, except upon specifications, which, if true, are so reprehensible as to amount to an impeachment of character. The charges here made, even if they were fairly imputable to Mr. Bacon, are not of that kind. I do not see the least reason to suppose that the bankrupt, with Mr. Bacon as trustee, would find any embarrassment in the performance of his duty to disclose assets, or to reveal all improper claims upon the estate; or that Mr. Bacon would not freely and properly receive such information and make the most of it. The choice of the creditors should, therefore, be approved.

In what has been said above it is not intended to qualify previous rulings as respects the authority and duty of the court or referee to disapprove the choice of creditors when the person selected by them is lacking in substantial character, capacity, independence and good standing, or in any of the other qualities necessary to a faithful and efficient administration of the bankrupt's estate.