## In re McGILL.

### FALTER et al. v. REINHARD et al.

### (Circuit Court of Appeals, Sixth Circuit. January 8, 1901.)

### No. 911.

1. BANKRUPTCY—FIRST MEETING OF CREDITORS—POWER OF REFEREE—INQUIRY AS TO PROXY'S RIGHT TO VOTE.

Bankr. Act 1898, § 44, provides that the creditors shall appoint a trustee at their first meeting after the adjudication. Section 55, subd. "b," provides that at such meeting the judge or referee shall preside, and, before proceeding with the other business, may allow or disallow the claims of creditors there present, such allowance determining which creditors may participate in the proceeding of the meeting, including the choice of a trustee. Section 1, cl. 9, provides "creditor" shall include any one owning a provable claim, and may include his duly-authorized proxy. Chapter 2, § 2, cl. 15, provides that the court can make such orders, issue such process, and enter such judgments, in addition to those specifically provided for, as may be necessary for enforcement of the act. Section 38 provides that referees are invested, subject to review by the judge, with jurisdiction to perform such part of the duties, except as to questions arising out of applications for compositions or discharges, as are conferred on the courts, except as otherwise provided. General Orders in Bankruptcy, rule 12 (32 C. C. A. xvi., 89 Fed. vii.) requires all proceedings, except such as are required to be had before the judge, to be had before the referee. Rule 13 (32 C. C. A. xvii., 89 Fed. vii.) provides that the appointment of a trustee by the creditors shall be subject to approval or disapproval by the referee or judge. *Held*, that a referee presiding at a first meeting of creditors may determine that creditors' proxies are not entitled to vote because their powers of attorney have been obtained by the bankrupt to be voted for a trustee of his choice.

2. SAME—ELECTING TRUSTEE—CREDITORS PRESENT.

Creditors represented at the first meeting of creditors of a bankrupt by proxies, whose powers of attorney do not lawfully authorize them to participate in the meeting, because obtained by the bankrupt to be voted for a trustee of his choice, will not be counted as present and necessary for choice of trustee.

3. SAME—POSTPONING ELECTION.

The referee, at the first meeting of creditors of a bankrupt, will not be held to have abused his discretion in not postponing election of a trustee, after having held proxies disqualified, it not appearing how much delay would have resulted.

Appeal from the District Court of the United States for the Eastern Division of the Southern District of Ohio, in Bankruptcy.

This case comes into this court on a petition to review the decision of the district court rendered on a certificate by the referee in bankruptcy, which is as follows:

"I, Charles M. Rogers, one of the referees of said court in bankruptcy, do hereby certify that, in the course of the proceedings in said case before me, the following questions arose pertinent to the said proceedings: (1) Whether or not a referee presiding at the first meeting has power to hear and determine the question of the right of a creditor's proxy to vote for the choice of trustee upon his offer to vote and the same being challenged by other creditors. (2) If a referee has such power, whether or not a creditor's proxy, who, under authority of a special letter of attorney, offers to vote at the creditors' meeting for the choice of trustee, shall, upon objection thereto by other creditors, be permitted to vote, when such letter of attorney has been obtained by interference of the bankrupt, and the casting of such vote will result in the appointment of a trustee who is the choice of the bank-

rupt. The above questions arose in the course of the vote as it was being taken for trustee at the first meeting, beginning with said vote on the 11th and concluding the same on the 13th day of September, 1900, the undersigned presiding. One A. Neydon having presented to me, and the same having been filed, two hundred and forty-one special letters of attorney, executed by creditors whose claims had been allowed, aggregating in amount seventy-three thousand eight hundred and sixty $13/100$ dollars, was present at said meeting, and pursuant to these letters offered to vote for Mr. Walter Zinn, to be trustee, the number and amount aforesaid of the claims of creditors represented by the proxies held by said Mr. Neydon; whereupon the said votes, and each of them, so offered by him, were by other creditors present or duly represented objected to and challenged, on the ground that said letters of attorney, and all the votes offered to be cast pursuant thereto, were obtained by the interference of the bankrupt. I thereupon heard the evidence in support of and in opposition to said challenge. A summary of such evidence is as follows:

"On the 11th day of August, 1900, the next day after the adjudication of bankruptcy, Reinhard & Co., by authority of Henry A. Reinhard, one of the bankrupts, caused to be sent by mail letters addressed to probably five hundred of its creditors, requesting them to call at the bank (Reinhard & Co. having been, prior to their bankruptcy, engaged in the banking business in Columbus, Ohio) and have their respective claims proved without expense to the creditors, and further stating in the letter that they wished to talk with the creditors about the affairs of the bank. The letters as sent out to each creditor were prepared by Mr. George A. Fairbanks, who had been, and still is, the attorney of Mr. John G. Reinhard, and one of the bankrupts, and was the attorney of Reinhard & Co., and of each of the individuals of the partnership in the preparation of the respective deeds of assignment immediately preceding the bankruptcy proceeding. He is now, and has been since the receiver, Mr. Walter Zinn, was appointed, the attorney of such receiver. In response to these letters, and during a period of a week or ten days after they were sent out, a large number of the creditors came to the bank, probably more than four hundred. The persons who were present during this period to receive creditors who called pursuant to these letters were Mr. Fairbanks, Mr. John C. Reinhard a portion of the time, Mr. A. Neydon, and Mr. Frank H. Gale. Mr. Neydon has been for seventeen or eighteen years the bookkeeper of the Westbote Company, a corporation whose stock prior to the bankruptcy was all owned by John C. Reinhard and Henry A. Reinhard, the bankrupts, the latter of whom was the manager and treasurer and the former was its president. After these letters were sent, Mr. Fairbanks requested Mr. Neydon to act in the capacity of attorney in fact to vote proxies that might be given in the interest of Mr. Zinn, and Mr. Neydon was by Henry A. Reinhard temporarily relieved of his duties as bookkeeper of the Westbote Company, whose business was conducted adjoining the bank building, and was directed to remain at the banking house, where he did remain during business hours practically all the time after the 11th of August for a week or ten days. Upon creditors presenting themselves from time to time, in response to these letters, at the banking house, they were informed by Mr. Fairbanks principally, and part of the time by Mr. John C. Reinhard, that it was necessary to make proof of their respective claims in order to have them allowed by the referee, and that the preparation of their proofs would be without expense to them. They were also requested by Mr. Fairbanks, Mr. Reinhard, Mr. Neydon, or Mr. Gale, or some of them, to execute special letters of attorney, along with their proofs, to Mr. Neydon to vote for a trustee at the first meeting; saying to the creditors, in substance, that they desired to have Mr. Zinn elected as trustee, and wanted the proxies of the several creditors, in order that they might be cast for Mr. Zinn as such trustee. The banking house was at the time in charge of Mr. Zinn, the receiver, and under his control, and was kept open for the purpose, in the main, of receiving these creditors as they came in, and giving them the information as to what would be required of them in making their proofs, and to request of them to execute proxies to Mr. Neydon for the purpose of voting them for Mr. Zinn.

"It further appears from the evidence that one of the affairs of the bank about which, as stated in the letter, Reinhard & Co. wished to talk with their creditors, was 'the election of a trustee,' and, so far as disclosed by the evidence, the affairs of the bank proper—that is, the business of the bank— was discussed but very little. Mr. Neydon did a large portion of the writing of the proxies, and said that he was there as a favor to the Reinhards. He made it his business to and did importune the creditors, as they appeared there, to give their powers of attorney to him, that he might vote for Mr. Zinn. After their proofs were prepared, and Mr. Neydon importuned the creditors to obtain the powers and received their assent, they were directed to Mr. Gale, as the notary, to administer the oath to the proofs and take the acknowledgment of the proxies. After proving their claims, they left their certificates of deposit or pass book, as the case might be, with Mr. Neydon, who gave them a receipt therefor. Many of these receipts, probably from 25 to 100 in number, were signed by John C. Reinhard for Mr. Neydon. The letter sent out, as well as the blank proofs and proxies, were printed at the printing house of the Westbote Company, by direction of Mr. Fairbanks, and nothing was said about paying for them, and no agreement was made therefor, nor has any bill been rendered to anybody for the printing.

"Neither Mr. Fairbanks, nor Mr. Neydon, nor Mr. Gale, nor Mr. Zinn had any interest as creditors of the bankrupts, but were strangers to the bankruptcy proceedings. After the powers were obtained, Mr. Fairbanks borrowed 100 revenue stamps, of 25 cents each, of the Merchants' & Manufacturers' Bank of Columbus, Ohio, of which Mr. Zinn was and is a director. Mr. Neydon, finding them on the table at Reinhard's bank, placed them upon the powers of attorney, and canceled them. John G. Reinhard was absent from the city at the time the letters were presented and addressed to creditors, and afterwards, returning, assented to the acts of his brother, Henry A. Reinhard, in that behalf.

"While John G. Reinhard testified that he did not request any creditors, except a Cincinnati bank, to execute powers to Mr. Neydon for the purpose of voting for Mr. Zinn, the evidence of as many as 11 creditors, who were called as witnesses and testified on that point, was to the contrary. Upon the statement by counsel in opposition to the challenge that they would not offer any testimony as to Reinhard's solicitation of creditors, no further testimony on this point was offered by counsel for objecting creditors. Mr. Reinhard further testified that he was present at the banking house but little of the time while the proofs and proxies were being taken; but the evidence of the creditors who were called as witnesses shows that he was there when they were present, and was actively engaged in seeing that the proxies were given to Mr. Neydon, and, when certain creditors refused to execute proxies, he made the remark that they could go with their books and papers; 'We have enough without them to elect our man, Zinn.' In referring to the proceedings at the bank in obtaining the proofs and proxies, he used the words 'we' and 'us,' and after the majority, if not all, the proxies were obtained, he said at the Great Southern Hotel, in Columbus, Ohio, in presence of two witnesses (and his statement is not contradicted by him except that he does not remember it), 'that I have over 400 proxies, and he is elected.' repeating the remark, as to Mr. Zinn being elected, twice or three times.

"It also appears from the evidence, as well as that it transpired in my presence at the first meeting, that the proofs and proxies were brought to the meeting in a large canvas sack, and spread out on a large table in the court room. The contents of the sack, consisting of numerous packages or bundles of papers inclosed in envelopes making up the different packages. During much of the time before the business of the election proper was begun, John G. Reinhard was actively engaged with the various papers, on the table, examining and arranging them, and seemed to be familiar with them, and understood the system of their arrangement, as well as their contents, and assisted Mr. Gale and Mr. Fairbanks in presenting to me the proofs and proxies for examination, and took an active interest in seeing that all the proofs and proxies so presented, over which they seemed to have control, were approved by me. During said meeting many creditors, who had there-

tofore proved their claims down at the bank and executed proxies, appeared personally at the meeting, and demanded of Mr. Reinhard the return of the papers executed by them, and their certificates of deposit or pass books; whereupon either he destroyed the proofs and proxies, or the same were destroyed by Mr. Fairbanks or Mr. Gale, in his presence, delivering back to such creditors merely the original certificates or pass books, thereby necessitating the proofs of their claims to be executed before they could be presented for allowance to me. The proxies which Mr. Neydon presented at the meeting and offered to vote were proxies obtained in the manner above related.

"From the evidence adduced I find that the object of the letters sent to creditors by Reinhard & Co. was to have the creditors call at the bank, and obtain their powers of attorney for the purpose of voting by proxy for Mr. Zinn as trustee, and that Mr. Neydon and Mr. Fairbanks were the agents of the Reinhards for the purpose of carrying this object into effect; that the Reinhards had accomplished the object, which, by their letter, was intended to be accomplished, by obtaining the powers of attorney; and that it was the intention of the Reinhards to control the first meeting in the election of a trustee by means of these proxies; and that Mr. Neydon, in offering to vote said proxies, was acting as the agent of the Reinhards, in furtherance of the common design. I further find that, by solicitation, influence, and interference of the Reinhards themselves, and through their agents, Mr. Neydon and Mr. Fairbanks, these proxies have been obtained, and that but for such interference, aided by Mr. Zinn in allowing the bank to be opened and used by the Reinhards and their agents, these powers would not have been presented; that, while Mr. Neydon was ostensibly the agent of the creditors whose powers of attorney he held, he was in fact the agent of the Reinhards for the purpose of electing a trustee in their interest, and his object in offering to vote under authority of these letters of attorney was to choose a trustee, not for the benefit of the creditors, but in the interest of his real principals, the Reinhards, by whom he was employed,—to which findings of fact, and each of them, said Neydon, and Joseph H. Dyer, as counsel for John F. McGill, excepted.

"Thereupon, after hearing counsel in behalf of and in opposition to the challenge of the objecting creditors to the said votes offered by said Mr. Neydon, I made an order sustaining the said challenge of said objecting creditors, and denied to Mr. Neydon any right to vote pursuant to his said letters of attorney, to which Mr. Neydon, by his counsel, Frank H. Gale, and Joseph H. Dyer, as counsel for John F. McGill, creditor, whose claim of $533.52 was allowed, and whose proxy was held by said Neydon, excepted. And thereupon said Neydon, by his counsel, and said Joseph H. Dyer, as counsel for said McGill, demanded of me that a reasonable time be given for them to notify the creditors whose proxies said Neydon held, that such creditors might be represented at the meeting either personally or by duly-authorized proxies; whereupon I refused to interfere with the business of the meeting of creditors as then constituted, and to grant said demand, on the ground that the demand requested was not a matter over which I, as presiding officer, had power to act, and that the granting of such request, in my judgment, would have been an assumption of authority not possessed by me, and an interference with the deliberations of the creditors (the above grounds, however, not having been stated by me at the time of such refusal); to which refusal to grant said request the said Neydon, by his counsel, and Joseph H. Dyer, as counsel for said McGill, excepted. And the said creditors, present or duly represented at said meeting, concluded their business thereat in about an hour and thirty minutes after I had made the order sustaining the said challenge as aforesaid. And the creditors, present or duly represented at said meeting, exclusive of the proxies aforesaid, voted 189 votes in number and $103,126.11 in amount of claims proved and allowed, of which creditors 173 in number and $87,697.79 in amount voted for Mr. Fred C. Rector to be such trustee, and fixed the amount of his bond at $100,000.00; and 16 in number and $15,428.32 in amount voted for Mr. Walter Zinn to be such trustee, with the same amount of bond; and said Fred C. Rector, having received the majority of votes in number and amount of the claims of cred-

itors present or duly represented at said meeting, was, by said creditors, appointed trustee; and said appointment coming on before me for approval, and said Mr. Neydon, by his counsel, and Joseph H. Dyer, as counsel for John F. McGill, objecting thereto, and upon hearing said objections, I overruled the same, to which the parties excepted, and I thereupon approved the said appointment of Fred C. Rector as such trustee."

Upon hearing the district court approved and confirmed the findings and conclusions of the referee.

Abernathy & Folson, Dyer, Williams & Stouffer, Siving, Cushing & Morse, and Thomas J. Abernathy, for appellants.

Pugh & Pugh and T. E. Steele, for appellee Fred C. Rector.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

DAY, Circuit Judge (after stating the facts as above). Section 44 of the bankruptcy act provides that the creditors shall appoint one or more trustees at their first meeting after the adjudication. The act further provides (section 55, subd. "b") that at the first meeting of creditors the judge or referee shall preside, and before proceeding with the other business may allow or disallow the claims of creditors there present, and may publicly examine the bankrupt, or cause him to be examined, at the instance of any creditor. The allowance of claims determines which creditors may participate in the proceedings of the first meeting, including the choice of a trustee. Bankr. Act, § 1, cl. 9, provides "creditor" shall include any one who owns a demand or claim provable in bankruptcy, and may include his duly-authorized agent or proxy. Other duties than those specified intended to be devolved upon the judge or referee at the meeting are not defined in the statute, and we are left to ascertain the extent and scope of his duties in view of the express provisions of the act and the manifest purpose in clothing the judge or referee with the powers named. Clause 15, § 2, c. 2, Bankr. Act, provides that the court can make such orders, issue such process, and enter such judgments, in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of the act. The case under consideration had been referred to the referee to take such further proceedings as are required by law. Rule 12 of the general orders in bankruptcy (32 C. C. A. xvi., 89 Fed. vii.) requires that all such proceedings, except such as are required to be had before the judge, shall be had before the referee. Section 38 of the act provides that referees are invested, subject always to review by the judge, with jurisdiction to perform such part of the duties, except as to questions arising out of the applications of bankrupts for compositions or discharges, as are by the act conferred on courts of bankruptcy of their respective districts, except as in the act otherwise provided. Section 2 of the act confers powers on courts of bankruptcy, pursuant to which powers the said courts perform the duties invested in them with jurisdiction to make such orders, issue such process, and enter such judgments, in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of the act. In General Orders, rule 13 (32 C. C. A. xvii., 89 Fed. vii.), it is provided that the appoint-

ment of a trustee by the creditors shall be subject to approval or disapproval by the referee or judge. It is to be observed that either the judge or the referee is to preside· at the first meeting of creditors. It is to be presumed that, when the referee acts instead of the judge, his duties are judicial in their nature, and he is to pass upon such questions of that character as may arise in carrying forward the objects and purposes of the meeting. Loveland, Bankr. § 106; Coll. Bankr. p. 268. The exact question made in this review is, may the referee, in the exercise of the power given by the statute, determine the qualification and right to vote of one holding the proxy of creditors to the extent of inquiring as to whether such proxy is the duly-authorized power of the creditor? The authorities, both under the present act and the act of 1867, are united in maintaining the proposition that the bankrupt has no right to a voice in the choice of an assignee or trustee. Such officer is the representative of the creditors. He is often required to act in opposition to the bankrupt. He must investigate conveyances alleged to have been made in violation of the bankrupt law. He must see to it that the estate is administered to the end that creditors may be benefited, and as large a sum as practicable realized for the payment of their claims. Interference by the bankrupt—the voting of claims in his interest or at his direction—has always been discountenanced by the courts, and held to invalidate a choice of trustee thus secured. In re Wetmore,· Fed. Cas. No. 17,466, and In re Bliss, Fed. Cas. No. 1,543, cases decided under the act of 1867; In re Lewensohn (D. C.) 98 Fed. 576, decided under the present act. In the last case, Judge Brown, speaking upon this subject, says: "The beneficiaries are not the bankrupt, but the creditors. For that reason the law gives to them alone the choice of trustee. The bankrupt has no part in it, because presumably he has no interest in it."

It may be taken, then, as an established proposition, upon reason and authority, that interference by the bankrupt, certainly when such as to control the election, will avoid the choice thereby attained, as it is the policy of the law to secure a trustee who is the selection of the creditors, and not the bankrupt. Under the facts found by the referee, there can be no question that the proxies held by Neydon were procured by the bankrupt to be voted for a trustee of the bankrupt's choice. The findings disclose that the creditors were solicited to come to the banking house of the bankrupt, where the attorney and the agent of the bankrupt were present assisting in the preparation of proofs of debt and proxies, with the declared purpose of voting for and electing the choice of the bankrupt for trustee. To permit such an election to stand would be in fact, as was said by Judge Blatchford in Re Bliss, supra, "to permit the bankrupt to ·elect the assignee, which is against the policy of the law." Such selection, in the exercise of the power conferred by rule 13 (32 C. C. A. xvii., 89 Fed. vii.), the referee could not approve. In view of his power of revision, must the referee act upon it alone, or may he hear and determine an objection when the power of attorney thus obtained is sought to be used as the authority for voting for a trustee? It is urged upon the one hand that such is

the sole authority of the referee over the election, and that creditors whose claims are duly proven may vote for whomsoever they please, subject to the final approval or disapproval of the referee or court. Under the act of 1867 the holdings do not seem to have been uniform, but it is to be remembered that under the present act, subject to review by the court, the referee is given broader powers than were conferred upon the register under the act of 1867. Under the latter act the register could make no decision, but must certify disputed questions to the court for determination. Under that act authority is not wanting to support the proposition that the register should not receive votes under proxies obtained by the bankrupt with a view to the selection of an assignee of his choice. In Re Wetmore, above cited, Judge Brown, now Mr. Justice Brown of the supreme court, held, when there was good reason to suspect that the assignee had been chosen in the interest of the bankrupt, confirmation should be refused, and in directing a new election, after setting aside such a selection, instructed the register to receive no votes at such election cast by the bankrupt or his solicitor under powers of attorney from other creditors. In the case of In re Noble, Fed. Cas. No. 10,282, Mr. Justice Blatchford, then district judge, held that the register had no power, without a special order of the court, to inquire into the right of creditors to vote, where it had been charged that the votes had been influenced by the bankrupt. The same judge, however, in the case of In re Holmes, Fed. Cas. No. 6,632, held, speaking of the powers of the register presiding at a meeting to consider a proposition for a composition made by the bankrupt:

"Under the language of the general order, which requires the register to hold and preside at the meeting, and to report to the court the proceedings thereof, with his opinion thereon, he must be held to possess the power to regulate the form and order of proceeding at the meeting, and to decide questions that may arise, subject to review by this court. He must necessarily decide who are entitled to vote, and in respect to what amount of debts, and to pass upon the regularity and propriety of form of proofs of debt and of letters of attorney. Whether he has the right to reject a vote because the claim is disputed on its merits is a question which must be passed upon by the court hereafter."

In Re Frank, Fed. Cas. No. 5,050, the register had inquired into the question as to whether claims had been procured for the purpose of controlling and influencing the election of an assignee, and whether that was sufficient reason for postponing the payment of debts, and the court affirmed the propriety of the register's action. Under the present statute, as we have seen, the referee presides in the place of a judge, and he must certainly determine who are entitled to participate in the meeting as creditors. Bankr. Act, c. 1, § 1, provides that a creditor may include a duly-authorized proxy. Therefore, when the creditor presents his claim, the referee has the authority of the statute to inquire, for the purpose of the meeting, into the claim presented, and to determine that such person is or is not a creditor. Likewise, we see no reason, when the creditor does not appear in person, but undertakes to qualify another to represent him, why the referee may not inquire into his status to determine

whether he is a duly-authorized and lawful attorney in fact. We think the duty of the judge or referee presiding at such meeting includes the decision of questions necessary to determine the legal rights of those asking to participate, to the extent, at least, of ascertaining whether they are creditors or duly-authorized representatives of creditors. It was not intended by the act that these questions should be determined by the creditors. Certainly the referee would be compelled to decide between persons claiming to hold different powers of attorney from the same creditor, or, where the execution of the power was denied, to determine the fact. We can see no difference in principle in the determination of these questions and passing upon the validity of powers of attorney which are alleged not to be the authorization required by the statute, but to have been procured by the bankrupt in his interest by one in his employ. These objections go to the qualifications of the voter in the meeting, and must necessarily be determined by the judge or referee, who is authorized to preside thereat. Nor do we see anything inconsistent with this conclusion in the right given the referee to disapprove the choice of the creditors. In the one case, he is determining who may participate in and vote at the election; in the other, he is called upon to pass upon, and affirm or disaffirm, the choice of the meeting composed of those qualified to vote. Before the meeting is organized, the referee presiding must determine who are to make up its constituent members, and we think it is a valid objection that one offering to qualify is shown to be the representative of the bankrupt acting under a power of attorney, nominally executed by the creditors, but in fact procured by the bankrupt in his interest, in order to vote his choice for trustee. It is urged that the power thus exercised may result in the postponement of the choice of an assignee owing to the delay incident to an inquiry into these preliminary questions. Delay would seem to more naturally result from permitting an election under powers of attorney obtained in the interest of the bankrupt which make it clear that the referee must disapprove of the choice and order a new election. The argument of convenience, however, should not abridge the right of creditors to choose an assignee free from interference by the bankrupt.

It is urged that, assuming Neydon should not have been permitted to vote under the power executed to him, the meeting should have been adjourned to permit the creditors to appear and vote for a trustee. The act provides that a majority of the creditors present in number and amount who have proven their claims is essential to a choice, and it is claimed that such majority had authorized Neydon to represent them. After the powers of attorney to him were rejected, it is claimed an election was held by a minority of the creditors present. All the creditors had an opportunity to be present at the meeting. They could appear in person or by lawful proxy. It is the object of the bankruptcy act that the proceedings shall be rapidly carried forward, that the estate may be distributed to those entitled to share therein. The creditors who authorized Neydon to act could only be counted in making up the number of

those present if the powers of attorney to him were regarded as lawfully authorizing him to appear and participate in the meeting. When it appeared that the powers of attorney were in the interest of the bankrupt, and that Neydon was representing the bankrupt, he could not be taken as present representing creditors. The referee might have postponed the meeting. How much delay would have resulted does not appear. How much the creditors were scattered, and to what inconvenience they would have been put in attending a postponed meeting, the record does not disclose. One of the prime objects of the first meeting is to choose a trustee to administer the estate, and we think there is nothing in the record disclosing an abuse of discretion in declining to adjourn.

Entertaining these views, we think the district court did not err in approving the action of the referee, and its judgment is therefore affirmed.