Keeler, J.
The questions arise upon the demurrer to the answer of the defendant. The answer alleges, among other things, that for a long time prior to January, 1910, .there was and still is, among the officers and places of employment in the Department of Public Service, and in the division of lighting thereunder, of the city of Cleveland, an office and position of employment known as that of inspector of street lighting; that prior to the said date said office was occupied by a person known as inspector of street lighting, who, subsequent to the second day of January, 1910, to-wit, January 31st, 1910, was discharged and the position filled by the appointment thereto by the defendant, Andrew B. Lea, Director of Public Service, of another person, who has continuously to the present time occupied said office and position, performed the duties and received the emoluments and salary thereof, and that *365 said appointment was made by defendant in tbe ordinary course of administering the duties of his department. In other words, the defendant admits he did not make the appointment in accordance with the provisions of the statute then in existence, but says that it was nevertheless legal. That the said director of public service had a right to- discharge said inspector is not disputed. That privilege was given him by statute, subject also to limitations. But the legality of his discharge is not before me. That he had any legal right to appoint his successor is disputed, and the legal status of said appointee is involved.
The Legislature passed in 1908 (99 O. L., page 562), what is known as the Paine law, amending the municipal code of 1902, modifying and enlarging the -powers of municipal corporations and their officers. This act had for its object, among other things, the placing under the civil service of certain employes of the municipalities throughout the state, dividing them into classified and unclassified lists. The inspector of street lighting, it is conceded, belonged to the former class. This law, it may be said in passing, grew out of a public sentiment which began to assert itself and attract -attention some twenty-five or more years ago with reference to employes in the federal service, and which was given expression to subsequently by Congress in the form of what I may call the National Civil Service law. Not long thereafter a like statute was passed by the state of New York, and so beneficial was it in its results that its underlying principles were incorporated in the Constitution of that state in 1895. About the same time Massachusetts passed a similar law, and 'Illinois followed in 1895. All these statutes responded to a rising and increasing public belief that employment in the public service should be removed from partisan politics as far as possible, to the end that the service might be more efficient, more honorable, be based upon merit, and fitness to be ascertained by competitive examinations open to all.' In short their object (including that of our own law of 1908) was to do away with the so-called spoils system, which a writer on constitutional history defines as an inviolable principle of American politicians. A statute with such a foundation or origin should be construed, if possible, so as to meet the demand which the public plainly had in mind when *366 it was enacted. It went into effect August 1st, 1909, with the exception of Sections 157, 158, 159, 160, 161, 162, 163, 164 and 165, which became operative from and after January 1, 1910, or, as the Supreme Court has ruled, January 2, 1910, at which time Mr. Lea was director of public service by appointment of the mayor, and has remained such ever since. All of his official powers with reference to the appointment of employes were derived from the statutes which went into effect almost simultaneously with his taking office. Section 129 of the act provides that he shall have the exclusive right, subject to the limitations therein prescribed, to appoint all officers, clerks and employes in his respective departments and offices.
The limitations referred to are the several sections named above, and have reference to the civil service features of the statute. Briefly stated, these sections provide for the appointment of the civil service commission, for the classified and unclassified service, for the examination of applicants, for promotions, dismissals, rules, and the duties of the commission.
The statute further provides that the appointing officer shall notify the commission of any vacancy to be filled, and that he shall thereupon appoint one of three persons certified to him by the commission, such persons having passed the required examination.
It is claimed by the defendant that the vacancy which existed was created by his own voluntary act in discharging the former occupant. He says, further, that no list of persons eligible to said office and position had as yet been prepared and established by the civil service commission.
I am unable to see upon what theory of law the defendant could voluntarily create a vacancy in his department, and then immediately proceed to fill it as he states in his answer, in the ordinary course of administering the affairs of his department, but in direct violation of the statute then in existence clearly and unmistakably defining his powers in respect thereto, and also his limitations.
The fact that the civil service commission had not yet organized, which body it was his duty to notify; and the fact that said commission had not prepared an eligible list from which, he could *367 make an appointment, are not, in my judgment, a sufficient answer to the clear requirement of the statute. He had a right to discharge any or all the employes in his respective departments, but he had no right to make any appointment except in the way provided by law. The statute itself provides for emergencies in Section 165, which gives to the mayor the right to make temporary appointments; and he alone, if anybody, in my judgment, had the right to make the appointment in question; and even he could make it only upon the ground that the dismissal or vacancy amounted to a stoppage of public business.
It is perhaps apart from the ease, but on the theory that the mayor made the appointment as alleged in the petition, deriving his power so to do from Section 165, said appointment was temporary and terminated on August 23d, 1910, the date when the civil service commission notified the department that it had prepared a list of eligibles, which it was ready to certify to him on his request. In other words, the condition which made the appointment temporary, to-wit, the failure of the commission to organize and prepare a proper list for certification, had passed, and the office became vacant. Section 165 would seem to contemplate not only such a situation as the facts in this case present, to-wit, the discharge of an employe from an important public position; and the vacancy necessarily resulting therefrom, but those exigencies which might arise from riots, conflagrations and other like disturbances. That the mayor’s power of appointment was intended by the Legislature to be limited to the latter kind, as claimed by the defendant, I do not believe. The language of the section, in view of the entire statute and the conditions surrounding its introduction which the Legislature must have contemplated, seems to me not difficult to understand. It is a principle of construction that the meaning of a statute may be inferred from the existing circumstances or contained and the necesstiy or want of necessity of adoption (158 Ill., 653). The exigencies referred to are those "provided for in this act.” The mayor is still made the chief conservator of peace within the corporation, and it is still his special duty to see that all ordinances, by-laws and resolutions of the council are faithfully obeyed and enforced. It is fair to pre *368 sume that if the Legislature had had auy other meaning in mind, it would itself have construed the section. -But the language is, to my mind, so simple, in view of all the circumstances, that, no construction was deemed necessary.
The word “vacancy” has no technical meaning. An office is not vacant so long as it is supplied, in the manner provided by the Constitution or law, with an incumbent who is legally qualified to exercise the powers and perform the duties which pertain to it, and, conversely, it is vacant, in the eye of the law, whenever it is unoccupied by a legally qualified incumbent, who has a lawful right to continue therein. 77 Pac., 299; 36 Am. Rep., 771; 98 Fed., 576-9.
In a New York ease a mandamus to compel payment of the salary of an employe who had not been appointed as required by the civibservice law of that state, was refused. 148 N. Y., 360.
The appointment, therefore, of the present inspector of street lighting, as alleged in the answer, I find to have been without any warrant of law, and void. The'vacancy which 'existed at the dismissal of the former inspector was continuous and exists at the present time; and the only way in which it can be filled is for the director of public service to notify the commission of said vacancy, and appoint to said place one of three candidates certified to him by the civil service commission. 'In either event, whether the appointment was made by the mayor or by the defendant, the law attaches, and the position in question can be filled only by a strict compliance with its provisions.
The demurrer to the answer will therefore be sustained, and the writ of mandamus allowed as prayed for in the petition.