## BOLLMAN v. TOBIN.

(Circuit Court of Appeals, Eighth Circuit. January 16, 1917. Rehearing Denied February 21, 1917.)

### No. 171.

1. BANKRUPTCY ⬥125—TRUSTEE—EFFORTS TO CONTROL ELECTION.

The choice of a trustee, subject to approval of the court, which should be given, except for good cause, being by Bankr. Act July 1, 1898, c. 541, § 44, 30 Stat. 557 (Comp. St. 1913, § 9628), intrusted to the creditors, efforts of creditors to control election of a trustee, so long as directed to the welfare of the entire body of unsecured creditors, are not objectionable, as is interference therewith by the bankrupt, or one on his behalf.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 170, 180, 181, 183, 184; Dec. Dig. ⬥125.]

2. BANKRUPTCY ⬥132—TRUSTEE—REMOVAL.

The trustee in bankruptcy failing to carry out the wishes of, and placing himself in direct antagonism to, the creditors by whom he was chosen, thus making it impossible to secure their co-operation, especially when indispensable to efficient administration of the trust, should be removed, reason for his action based on the welfare of the entire body of creditors not being shown; it being unnecessary that he shall have been guilty of any personal dishonesty.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 190; Dec. Dig. ⬥132.]

Petition to Revise Order of District Court of the United States for the Eastern District of Missouri; John C. Pollock, Judge.

Petition by Otto Bollman to revise order denying petition for removal of John C. Tobin, trustee in bankruptcy. Order vacated, with directions.

Randolph Laughlin, of St. Louis, Mo., for petitioner.
Charles A. Houts, of St. Louis, Mo., for respondent.

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before SANBORN and SMITH, Circuit Judges, and AMIDON, District Judge.

AMIDON, District Judge. In December, 1915, the brokerage firm of Payne & Becker, doing business at St. Louis, Mo., was adjudged bankrupt on the petition of Otto Bollman and others. Bollman was the principal creditor having a claim amounting to $39,000. Randolph Laughlin had been his attorney, and was also a creditor of the estate. Bontie Becker, a member of the firm, absconded a short time before the adjudication in bankruptcy, and has not yet been found. He was in charge of the business at St. Louis. Payne, the other partner, resided at Kansas City. One of the principal contentions of the creditors was that E. C. Becker, the father of Bontie Becker, was a silent member of the firm. He was financially responsible, and the establishment of his liability as a partner was the main hope of the creditors. Mr. Bollman and Mr. Laughlin led a campaign to elect a trustee favorable to aggressive action to establish the responsibility of Mr. E. C. Becker. Mr. Becker undertook a counter campaign to secure a trustee favorable to himself. The Bollman-Laughlin faction secured a majority in amount and number of creditors. Powers of attorney to represent them were given to Mr. Laughlin. He first elected Mr. Bollman, but the referee, having in mind the fact that Bollman was a large creditor, and that his claim was questioned, refused to approve his selection as trustee. Thereupon Laughlin cast his votes for the respondent, John C. Tobin, who had been receiver of the bankrupt estate. The Becker faction objected to Tobin, on the ground that he intended to appoint Laughlin as his attorney. Tobin was present, but made no answer to the charge, and the referee overruled the objection. Tobin had been active with the creditors who elected him, and accepted the appointment, knowing well the campaign that had been conducted, and the purpose of the creditors who had prevailed. Notwithstanding this, he so conducted the trust as to forfeit the confidence of the creditors and of Mr. Laughlin. He had conferences with E. C. Becker. He took no action to establish Becker's liability. He appointed a couple of young lawyers as his attorneys, who knew nothing about the affairs of the bankrupts, and who have accomplished nothing, either in the collection of the estate or the enforcement of Becker's liability. An expert bookkeeper had been employed by the Bollman faction to make an investigation of the business transactions of Payne & Becker, and he had made a preliminary report. His report was turned over by the trustee to the bankrupts, and has been dismembered and parts of it lost. The result of these acts by the trustee is that he has forfeited the confidence of the creditors by whom he was elected. They refuse to communicate with him, or to co-operate with him or his attorneys in the administration of the estate. The result has been antagonism, recrimination, a barren administration, and fruitless litigation. Finally the creditors who secured Mr. Tobin's election presented a petition to the court asking that he be removed. In it are charges which affect, not only his competency and fidelity, but also his honesty. This petition was answered, and a full hearing had before the trial court. The

learned trial judge ruled that the question whether Mr. Tobin had forfeited the confidence of the creditors, or failed to carry out the policy which they desired, was wholly immaterial. He insisted that, inasmuch as charges had been made affecting his integrity, those charges must be proved, or the petition be denied. He condemned both the creditors and Mr. Becker for the campaign that was conducted for the election of a trustee. He expressed the opinion that Mr. Tobin ought not to continue as trustee, but refused to remove him because the charges affecting his integrity had not been proved, and to remove him might reflect upon his character. The petition was therefore dismissed, and the creditors have filed the present petition to revise.

We think that the learned judge, in his zeal to protect Mr. Tobin's character, lost sight of the interests of the estate. It was not necessary that either be sacrificed.

[1] We first observe that the court fell into error in visiting the same condemnation upon the creditors and upon Mr. E. C. Becker for their efforts to control the election of a trustee. One of the distinctive features of the present bankruptcy law is the power which it gives to creditors in the administration of the estate. It treats the estate as theirs, and requires that they be consulted in meetings at all important steps. They may also compel special meetings at any time for the expression of their views. Section 55, subdivision "C" (Comp. St. 1913, § 9639), provides:

"The creditors shall at each meeting take such steps as may be pertinent and necessary for the promotion of the best interests of the estate and the enforcement of this act."

At these meetings a majority of the general creditors in number and amount controls. See sections 55 and 58 of the Bankruptcy Act (Comp. St. 1913, §§ 9639, 9642), and General Order No. 13 (89 Fed. vii, 32 C. C. A. vii); In re Lewensohn (D. C.) 98 Fed. 576; In re McGill, 106 Fed. 57, 45 C. C. A. 218.

The courts have uniformly enforced these distinctive features of the law. It is true that the administration of the estate is by the court, and not by creditors; but on questions of general business policy the wishes of a majority of the creditors ought not to be disregarded, except for good cause arising out of some special feature affecting the particular estate. If the majority seeks a factional advantage to the injury of the minority, it is the duty of the court to interfere and protect the rights of all. But so long as the majority seeks no advantage, except such as will accrue to the benefit of all creditors, their judgment should prevail, unless the circumstances are quite exceptional. One of the highest acts of the creditors is the choice of a trustee. That power is clearly committed to them by section 44 of the Bankruptcy Act. Their choice is subject to the approval of the court, but should be approved unless good cause exists for disapproving. One of the chief causes for disapproval is interference in the election by parties having an interest hostile to the general creditors, such, for example, as the bankrupts or their friends or kindred. Such interference has been frequently condemned by the courts. In the case of In re Lewen-

sohn (D. C.) 98 Fed. 576, Judge Brown, after a careful examination of the decisions and the statute, uses this language:

"The beneficiaries are not the bankrupt, but the creditors. For that reason the law gives to them alone the choice of trustee. The bankrupt has no part in it, because presumably he has no interest in it."

The Circuit Court of Appeals of the Sixth Circuit, in the case of In re McGill, 106 Fed. 57, 45 C. C. A. 218, speaking by Mr. Justice Day, says:

"It may be taken, then, as an established proposition, upon reason and authority, that interference by the bankrupt, certainly when such as to control the election, will avoid the choice thereby attained, as it is the policy of the law to secure a trustee who is the selection of the creditors, and not the bankrupt."

See, also, In re MacKellar (D. C.) 116 Fed. 547; In re Hare (D. C.) 119 Fed. 246; In re Van De Mark (D. C.) 175 Fed. 287; Collier on Bankruptcy, 637, 641.

It is manifest, therefore, that the activity of Mr. E. C. Becker to control the election of a trustee must be treated quite differently from the campaign of the creditors to accomplish that result. Mr. Becker's campaign was conducted in antagonism to the creditors, to protect himself against liability. Even if he is not a member of the firm, his interference with the election of a trustee, owing to his close relationship to Bontie Becker, should be viewed as made on behalf of the bankrupt. To place his activities and those of the creditors in the same class, as the trial court did, is to visit the just and the unjust with the same condemnation. There is no way in which a majority of the creditors can be brought into uniform and intelligent action, except by leadership and co-operation. So long as efforts are directed to the welfare of the entire body of unsecured creditors, there can be no objection to such activities.

[2] Mr. Tobin has not only failed to carry out the wishes of the creditors by whom he was chosen, but has placed himself in direct antagonism to those creditors. In doing so he has violated the trust upon which he was placed in office. He could not thus depart from the policy desired by the creditors without being able to assign good reasons for so doing based on the welfare of the entire body of creditors. No such reason for his conduct is disclosed by the record. To justify his removal it is not necessary to find that he has been guilty of any personal dishonesty. It is enough that he has so conducted himself as to forfeit the confidence of those who are the beneficiaries of his trusteeship, and thus made it impossible for him to secure their co-operation. That is especially true in a case like the present, where the co-operation of the beneficiaries is indispensable to the efficient administration of the trust. The rule was stated by the Supreme Court in May v. May, 167 U. S. 310, 320, 17 Sup. Ct. 824, 828 (42 L. Ed. 179), as follows:

"The power of a court of equity to remove a trustee, and to substitute another in his place, is incidental to its paramount duty to see that trusts are properly executed, and may properly be exercised whenever such a state of mutual ill feeling, growing out of his behavior, exists between * * * the

trustee in question and the beneficiaries, that his continuance in office would be detrimental to the execution of the trust, even if for no other reason than that human infirmity would prevent * * * the beneficiaries from working in harmony with him, and although charges of misconduct against him are either not made out, or are greatly exaggerated."

The facts as we have outlined them in this opinion rest upon uncontroverted evidence. We may therefore deal with the case upon this petition to revise.

We join with the trial court in completely exonerating Mr. Tobin from all charges which affect his integrity. That, however, is as far as we can go, and we further find that the welfare of the estate demands his removal, and the election of a new trustee by the creditors.

The order of the trial court is therefore vacated and set aside, with directions to enter an order removing the defendant as trustee, and directing the referee to call a meeting of creditors to elect a new trustee. The procedendo will go down at the expiration of 20 days from the date of the filing of this opinion, unless otherwise ordered.