In re James Ross **HARTLEY,** Sharon Lee Hartley, Debtors.

The **UNITED STATES of America, ex rel. The PEOPLES BANKING COMPANY,** Plaintiffs,

v.

Quentin M. **DERRYBERRY, II Trustee,** et al., Defendants.

**Bankruptcy No. 81–01855.
Adv. No. 83–0817.**

United States Bankruptcy Court, N.D. Ohio, W.D.

June 20, 1985.

**854**

Thomas D. Drake and William E. Clark, Findlay, Ohio, for movant Peoples Banking Co.

Quentin M. Derryberry, II, Wapakoneta, Ohio, trustee/defendant.

Kenneth W. Sullivan and Richard G. Schultz, Chicago, Ill., and Steven L. Diller, Van Wert, Ohio, for trustee.

William H. Bracy, Toledo, Ohio, for Auto-Owners Mut. Ins. Co.

## OPINION AND ORDER

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter came on for trial on April 25, 1985 upon the motion of The Peoples Banking Company, McComb, Ohio (Peoples Bank) to remove Quentin M. Derryberry, II, as Trustee of the estate of James Ross Hartley and Sharon Lee Hartley, and upon its adversary complaint seeking damages against the Trustee and his surety for alleged violation of duties under the Bankruptcy Code in the administration of the estate. The proceedings were consolidated for trial since common issues of fact and law were involved. Peoples Bank based its entitlement to relief on the following grounds:

1. Failure to take possession of money advanced by creditors for a litigation fund.
2. Conflict of interest arising from the Trustee's ownership of 21 shares of Peoples stock in the Miller estate and the Trustee's law suit against Peoples Bank in the Hartley case.
3. Loss of estate funds due to a failure to obtain third party endorsement on insurance checks.
4. Failure to take possession of trucks owned by the debtor thereby allowing an administrative claim to be filed against the estate for storage costs.
5. Failure to recover preference payments.
6. Failure to rent or sell the debtors' home.

The court finds that the standard to be applied in removing a trustee is one that requires actual fraud or harm to the estate. Under that standard the Court finds that Peoples Bank has not shown cause for removal. Peoples Bank has also failed to prove grounds for liability on the part of the trustee or his surety. Therefore it's request for judgment must be denied in both proceedings.

## FACTUAL BACKGROUND

On September 8, 1981 the debtors, James Ross Hartley and Sharon Lee Hartley, filed a voluntary petition under Chapter 7 of the Bankruptcy Code. Pursuant to an order of the court, Quentin M. Derryberry, II, was then appointed trustee of the estate.

In December of 1981, the Trustee invited representatives of several of the creditors of the estate to attend a meeting in his office. Among those parties participating in the meeting were representatives of the Union Oil Company of California (Union Oil) and Peoples Bank. At the meeting, the Trustee discussed, among other things,

the prospects of recovery for creditors of the estate. In the view of the Trustee, considering the assets of the estate and the scheduled claims, the only substantial prospects for recovery by the creditors lay in the Trustee's pursuit of certain litigation on behalf of the estate. In order to pursue such litigation, the Trustee solicited funds from the parties in attendance. As a result of the meeting, Union Oil offered funds to the Trustee on terms he found unacceptable and which he rejected.

The other significant action originating from the December meeting was that several creditors deposited funds with Merle C. Weber for the purpose of creating a litigation fund which would be made available to the Trustee. Mr. Weber was present at the meeting because he had been hired by several creditors to recover funds owed them by Mr. Hartley. Also Mr. Weber was sharing whatever information he gathered from his investigations with the Trustee. All of the parties believed Mr. Weber would aid the estate in pursuing litigation that would result in the recovery of enough money to pay all of the creditors' claims.

In response to the creation of the creditors' fund the Trustee filed an Application for Instructions and Advice regarding the propriety of his accepting those funds for purposes of investigation and possible pursuit of litigation on behalf of the estate. In that application the Trustee stated that he was receiving information from Mr. Weber who was working for some of the creditors. The application also stated that the litigation fund had been deposited with Mr. Weber.

On June 4, 1982, after a hearing on notice to all creditors, the court entered an "Order on Application of Trustee for Instructions and Advice." There being no objections to such application, and the court finding that the grant of the application would be in the best interests of the estate and its creditors, the court Ordered the following:

[T]hat the Trustee be, and is hereby, authorized to accept the sums set forth in Exhibit A from the creditors listed therein and to accept additional sums subject to the provisions and conditions of this Order as follows:

1. The sums shall be received by the Trustee as unsecured borrowings under § 364 of the Bankruptcy Code (11 U.S.C. § 364) and shall be allowable as an administrative expense under § 503(b)(1) of the Code (11 U.S.C. § 503(b)(1)).

2. The Funds received hereunder shall become assets of the estate and be deposited by the Trustee in a separate account, and shall not be co-mingled with other monies of the estate.

3. The Trustee shall promptly report the receipt of additional funds to the Court, furnishing the name of the contributor, the amount contributed and the date of receipt.

4. The funds may be used only upon application to and prior Order of this Court.

5. The funds received hereunder shall be under the exclusive control of the Trustee and not of the creditor or creditors contributing the same, subject only to Orders and supervision of this Court.

6. The funds received hereunder shall be used for the purpose of investigating into possible fraudulent conveyances, preferential transfers and/or other actions seeking the recovery of assets for the benefit of the estate and the creditors.

7. The trustee shall account to the Court for all funds received hereunder heretofore or hereafter, which accounts shall be available for inspection by creditors.

The following creditors made contributions to the litigation fund which were paid directly to Mr. Weber:

| | |
|---|---|
| The People's Banking Company of McComb, Ohio | $ 3,500.00 |
| Mid-West Insurance Agency, Inc. of Piqua, Ohio | $ 5,000.00 |
| R.J. Hall Co. of Carey, Ohio | $ 40.00 |
| Paul A. Burson of Carey, Ohio | $ 2,000.00 |
| Larry Taylor of Carey, Ohio | $ 200.00 |
| C. Richard and Mary Ellen Gottfried of Upper Sandusky, Ohio | $ 2,000.00 |

| | |
|---|---|
| Kimmel Cleaners, Inc. of Upper Sandusky, Ohio | $   100.00 |
| Wolfe Kenworth of Perrysburg, Ohio | $   100.00 |
| Morral Oil Company of Morral, Ohio | $   100.00 |
| The Western Ohio Truck and Equipment Co. of Lima, Ohio | $   200.00 |
| Marvin Lee of Carey, Ohio | $   140.00 |
| Grover L. Rutter of Findlay, Ohio | $   100.00 |
| Southway Tire of Canton, Ohio | $   400.00 |
| | $13,880.00 |

The $13,880 was never turned over to the Trustee by Mr. Weber nor was any action taken by the creditors demanding the return or delivery of their contributions.

After the June 4th Order the Trustee made phone calls and wrote letters inquiring about the creditors fund but it wasn't until it was brought to the Trustee's attention that Mr. Weber had forged his endorsement on one of the checks that the Trustee instituted legal proceedings to obtain the money. The Trustee then filed an adversary proceeding, Case No. 84–0003, against Mr. Weber seeking a turnover of the money. On March 7, 1984 this Court entered a default judgment which directed Mr. Weber to deliver the litigation fund to the Trustee. Mr. Weber failed to comply with the Court Order so the trustee filed an Application and Praecipe for Writ of Assistance on November 21, 1984 in the United States District Court for the District of Arizona, which requested that the United States Marshals seize a bank account in which the trustee believed the litigation fund was deposited. It was discovered that the passbook number given to the Trustee actually belonged to Mr. Weber's son and it never had more than $500.00 in it. In yet another attempt to recover the $13,880 the Trustee filed an Application and Praecipe for Writ of Assistance in the United States District Court for the Northern District of Ohio in November, 1984, which requested that the United States Marshals seize the bond deposited with the court in Mr. Weber's criminal case. However, because Mr. Weber had filed a personal recognizance bond, no funds were deposited with the court, and the Trustee's application was denied. The Trustee has retained counsel in Phoenix, Arizona to enforce the bankruptcy court's judgment against Mr. Weber and he is currently continuing efforts to attempt to trace and recover the fund.

As evidenced by a letter dated January 13, 1982 from Merle Weber to O.J. Huffman (President of Peoples), Mr. Weber had contractual agreements with a number of Hartley creditors. The letter stated "These agreements are standard and provide for my being paid 10% of the debts owed from recovered funds, and that a portion of that 10%, 2% of the debt claimed is paid upon execution of the employment agreement." Although in the January 13, 1982 letter, Mr. Weber swore his loyalty to the bank and offered to waive the pre-payment for the bank, Mr. Huffman testified the $26,000 advanced to Mr. Weber in October of 1981 to satisfy the 2% requirement was never returned.

Mr. Weber's relationship with Peoples Bank began in July of 1981, two months before the Hartleys declared bankruptcy. Various arrangements concerning Mr. Weber taking an equity position in the bank and his purchasing a $550,000 note by Hartley from the bank were agreed upon but never consummated. On October 1, 1981 Peoples Bank in a letter signed by O.J. Huffman, granted Mr. Weber the authority to act for the bank to recover funds due it from Rentar Industries.

Mr. Huffman testified at trial that part of Peoples Bank's relationship with Mr. Weber included loans made to him during 1982 and 1983. One of those loans occurred in December of 1982. At the request of Mr. Weber, Mr. Huffman arranged to have money taken to a motel in Findlay for the purpose of it being delivered to Paul Gorman who was then an Assistant United States Attorney working on the Hartley case. Mr. Huffman made additional money available to Mr. Gorman and at some point Mr. Gorman came directly to the bank for a loan. The result of those transactions was that Mr. Weber and Mr. Gorman were convicted of violating 18 U.S.C. §§ 208 and 201 concerning conflict of interest as the result of offering and

accepting gratuities, while Mr. Huffman was granted immunity for his testimony.

Beginning in 1982 and over the period of several months the Trustee and his wife accepted checks from Mr. Weber totalling $27,500.00 which were deposited in a personal checking account. The Trustee orally agreed to repay Mr. Weber as soon as he received compensation from the Hartley case.

In approximately June or July of 1983, the Trustee convened a meeting in Chicago, Illinois at the offices of Antonow & Fink. Representatives of Union Oil, an unsecured creditor of the Hartley estate for approximately $910,000.00, attended the meeting and were given draft copies of certain complaints the Trustee eventually filed in this Court and the United States District Court for the Northern District of Illinois. Upon review of the content of these complaints, Union Oil agreed to lend the Trustee $25,-000.00 subject to the approval of this Court.

On November 14, 1983 the Trustee filed a motion for authority to obtain secured credit pursuant to 11 U.S.C. § 364(c) and to pay a retainer of $25,000.00 to the law firm of Antonow & Fink, his duly appointed counsel. After an extensive evidentiary hearing the court granted the Trustee's motion. *See In re Hartley*, 39 B.R. 273 (Bankr.N.D.Ohio 1984).

The court found that the Trustee entered into no written or oral agreement with Union Oil regarding the extension of credit. Also, there were no conditions imposed on the proffered money, although the Trustee did agree to provide Union Oil with a periodic assessment of the progress of the litigation.

Union Oil's expressed motivation in lending the funds was its belief, based upon the evaluation of several of its own in-house counsel, that the Trustee may have some viable claim that would result in recovery of funds for the estate and itself as an unsecured creditor. In particular, the representatives of Union Oil testified that they felt that a certain preference action against the Peoples Bank had a significant proba-bility of success. Union Oil viewed the $25,000.00 as "seed money" in that, if the preference action against Peoples Bank succeeded, adequate funding for the much broader litigation initiated or anticipated by the Trustee would be thus provided.

The Trustee subsequently filed adversary proceedings against three banks alleging fraudulent transfers, preferential transfers and racketeering activities. One of those proceedings was Case No. 83–0748 filed on September 7, 1983 against Peoples Bank consisting of a 6 count complaint seeking judgment in the amount of $6,500,-000.00.

On November 18, 1983 The Peoples Bank filed four adversary proceedings against the Trustee seeking damages in the Hartley, Peckinpaugh and Larry and Lucretia Miller cases as a result of alleged violation of his duties as trustee. The Trustee was served with courtesy copies of the four proceedings on November 18, 1983 in Courtroom 103 where the parties were assembled for a pretrial conference which was scheduled on the Trustee's complaint against Peoples Bank. When the Trustee's counsel inquired of Peoples' counsel as to the reason for filing the adversary proceedings against the Trustee he replied "because you drew first blood."

On November 30, 1983 motions to remove the Trustee were filed in the Peckinpaugh and Miller case, and on December 6, 1983 the Court received a motion to remove the Trustee in the Hartley case.

On September 25, 1984 Mr. Huffman sent a letter to David J. Fickel, Estate Administrator for the United States Bankruptcy Court which called for the removal of Quentin Derryberry, II from the roster of Trustees. The letter stated "of particular concern to me is the relationship between Mr. Derryberry and one Merle C. Weber of Phoenix, Arizona who is currently under indictment for allegedly loaning money to an Assistant United States Attorney investigating the Hartley bankruptcy. It would appear from the testimony of Mr. Derryberry at a hearing held in the Bank-

ruptcy Court on February 3, 1984, that Mr. Derryberry sought and accepted personal loans from Mr. Weber." Peoples Bank also sent a copy of that letter to Mr. James N. Cole, United States Attorney.

On April 15, 1985 this Court granted the Trustee's Second Application to Obtain Credit from Union Oil for an additional $25,000 pursuant to 11 U.S.C. § 344 and to Pay Additional Retainer to Antonow and Fink for the same reasons the first request had been granted and because no new objections had been raised.

On April 15, 1985, in the adversary proceeding instituted by the Trustee against Peoples Bank, this Court issued a proposed Order granting the Trustee's motion for partial summary judgment for recovery of a $500,000 preferential payment to The Peoples Bank of McComb under 11 U.S.C. § 547(b).

## DISCUSSION

The Bankruptcy Code at § 324 gives the court the power to remove the trustee as follows:

The court after notice and a hearing may remove a trustee or an examiner for cause

However it remains for the court to determine what constitutes "cause" on a case by case basis.

Case law reveals divergent standards have been applied in determining what constitutes cause to remove a trustee. Some of the courts professed to rule on the basis of the "best interest of the estate" or as a variation on that theme "avoiding even the appearance of impropriety." However most of the courts faced with alleged potential conflict of interest or potential wrongdoing hold that "potential conflicts of interest do not warrant the removal of a trustee" in the absence of "fraud and actual injury". *In re Freeport Italian Bakery Inc.*, 340 F.2d 50, 54 (2nd Cir.1965).

In *Bollman v. Tobin*, 239 F. 469, 473 (2nd Cir.1917) use of the "best interest of the estate" standard allowed a judge to remove a trustee while "completely exoner-

ating [him] from all charges which affect his integrity." That proclamation followed three pages of a decision which listed acts such as taking a report unfavorable to an alleged secret partner of the debtor and turning it over to the secret partner which resulted in it being found "dismembered with parts missing." Also the court declared that the trustee had appointed "a couple of young lawyers as his attorneys, who knew nothing about the affairs of the bankrupts, and who have accomplished nothing." *Id.* at 470. Surely after listing those actions the judge by using nonaccusatory language did not change the real standard of showing actual fraud or harm to the estate. But it did establish the general principle that without proving any actual wrongdoing a trustee may be removed under a standard so vague that it is virtually unassailable even by a trustee who is completely innocent.

Convenience and expeditiousness appear to be important factors in choosing the "best interest of the estate" standard. Faced with voluminous charges and countercharges the court in *In re Savoia Macaroni Mfg. Co.* 4 F.Supp. 626, 627 (E.D.New York 1933) held "while the court can determine and should promptly determine and ignore baseless charges, yet, when charges are made which have some substance in fact although the ultimate decision of same might prove groundless or grossly exaggerated the court should not delay the necessary administration of the estate in order to determine the ultimate truth of such charges." The court went on to say "without deciding the truth or falsity of the various charges made here, and solely in the interest of this harmony and the proper and efficient administration of this estate, this court has granted the motion to remove the present trustee."

The court in *In re Quick*, 43 F.Supp. 489, 490 (E.D.Ill.1942) chose to follow *Bollman* and removed the trustee "without reflection upon his honesty or integrity." The best interest of the estate standard appears again to have been chosen for convenience

and not a lack of grounds which were documented in that decision.

Similar to the previous cases which appear to list charges that would qualify under the more concrete standard of "actual fraud or harm" but yet rule in "the best interest of the estate" is *In re Greenwood Village, Inc.*, 2 BCD 1053 (N.D.Ohio 1976). *Greenwood* cited *Savoia, Bollman* and *Quick* to hold that without finding the trustee guilty of any personal dishonesty the court can remove the trustee to preserve harmony which is the "best interests of the estate." The "best interest" "no guilt" standard was used in *In re Greenwood Village, Inc.*, 2 BCD 1053 (N.D.Ohio 1976) even though the court stated the trustee "pursued litigation contrary to the orders of the bankruptcy court" and he "rejected a settlement offer ... without submitting said offer to the creditors, even though his counsel advised him the case.... could not be won." Furthermore he "advanced certain charges of misconduct by Bankruptcy Judge Harold F. White ... said charges totally unsupported in fact." *Id.* at 1054. Finally the court stated the probable reason for the trustee's actions was that "his interest ... as a limited partner [of the debtor] is adverse to that of the estate" *Id.* at 1057 yet the court was reluctant to rule on the truth of the matters asserted. Peoples Bank also refers the court to *Gross v. Russo* (In re Russo), 18 B.R. 257 Bankr.N.D.N.Y. (1982) which is another case removing the trustee in the "best interests of the estate" after listing what appears to be a conflict of interest but which refuses to find actual misconduct.

Perhaps if the problem is viewed as keeping the estate administration moving at any cost then the "best interest" standard is adequate. However the court is afraid that without addressing the truth of the allegations an honest trustee can be removed by plaintiffs who bombard the court with numerous charges that threaten to delay the administration of the estate. This Court is unwilling to allow blackmail to occur in order to make its job easier or hasten the administration of the estate.

Peoples Bank, sticking to cases which do not require a finding of actual fraud or harm, has asked the court to follow *In re Combined Metals Reduction Company*, 557 F.2d 179, 197 (9th Cir.1977) which held that "A trustee should not only avoid impropriety but also the appearance of impropriety." The court in *Combined Metals* was not ruling on removal of the trustee but was instead remanding to the district court the issue of whether the trustee had breached his fiduciary duty by granting a compromise to his brother who was a creditor of the estate. The court ordered the district court to determine if there was any loss to the estate and if the trustee should be held personally liable. Therefore the Court finds that *Combined Metals* does not provide a standard for removal in the case sub judice.

■ This Court believes the better standard and the one most frequently used in recent bankruptcy cases to be the one espoused in *In re Freeport Italian Bakery, Inc.* 340 F.2d 50, 54 (2nd Cir.1965) which states "grounds for disapproval or removal of a trustee in bankruptcy are not to be found in his formal relationships. We have traditionally stressed the elements of fraud and actual injury to the debtors' interests." That standard has been followed in *Baker V. Seeber (In re Baker)*, 38 B.R. 705 (D.Md.1983); *In re Microdisk, Inc.*, 33 B.R. 817 (D.Nev.1983); *In re Rea Holding Corporation*, 2 B.R. 733 (S.D.N.Y.1980); *In re O.P.M. Leasing Services, Inc.*, 16 B.R. 932, 8 BCD 841 (Bankr.S.D.N.Y.1982) and *In re Concept Packaging Corp.*, 7 B.R. 607 (Bankr.S.D.N.Y.1980). Forcing the accusors to quickly come forward and show actual harm or fraud protects not only innocent trustees but also the orderly administration of estates which should not be disrupted because creditors are unhappy when trustees institute actions against them pursuant to their statutory duties to recover preferences or fraudulent transfers.

### THE LITIGATION FUND

The first allegation to be discussed is whether the Trustee allowed $13,880 col-

lected by creditors for a litigation fund to fall into the hands of Merle C. Weber and then if he further refused to take possession of those funds which in Peoples Bank's opinion was ordered by this Court on June 4, 1982. This allegation contains two contentions which must be examined separately.

■ First the court must consider the suggestion that the Trustee allowed the funds to "fall into" the hands of Mr. Weber. The uncontroverted testimony at trial was that the creditors gave the money to Mr. Weber. One of those contributors was Peoples Bank which gave $3,500 to Mr. Weber (the $3,500 was not part of the $26,000 Peoples had advanced to Mr. Weber to collect Rentar's debt.) Further evidence that the funds were put in Mr. Weber's control by the creditors is found in the Trustee's Application for Instructions and Advice filed April 30, 1982. That document which sought advice from the court on the propriety of accepting $13,880 from the creditors stated that the money was deposited with Mr. Weber. There being no evidence that the money was ever presented to the Trustee the court must find that the allegation that he allowed it to fall into the hands of Mr. Weber is completely without merit.

■ The second part of this particular cause for removal concerns Peoples Bank's interpretation of this Court's Order of June 4, 1982 which was issued in response to the Trustee's Application for Instructions and Advice. Peoples Bank argues that because the Trustee did not obtain the funds from Mr. Weber he was in contempt of court and furthermore, Peoples Bank suggested that the Trustee's actions were influenced by his having received a personal loan from Mr. Weber. The Trustee argues the Order merely authorized him to accept the $13,-880 subject to certain conditions. Therefore, according to the Trustee the funds could not become assets of the estate until they were received by the Trustee which was an event that never occurred.

One of the questions asked by the Trustee in his Application for Instructions and Advice was "may he be permitted to receive and use such funds for the purposes specified?" This court's June 4, 1982 Order stated that the Trustee was "authorized to accept" the funds. The court's interpretation of that language is guided by the Sixth Circuit Court of Appeals decision in *U.S. v. Zipkin*, 729 F.2d 384 (1984).

In *Zipkin* the court was asked to rule on the admissibility of Bankruptcy Judge John F. Ray Jr.'s testimony interpreting his Order concerning the payment of fees to the receiver of a bankruptcy estate. In reversing the District Court, which had allowed the testimony, the Court of Appeals stated, "An order entered by a judge should speak for itself and not be varied by parol testimony as to what was meant by its provisions" *Id.* at 389.

The Order in question which was in response to a request for permission to receive funds reads "the Trustee be, and hereby is, authorized to accept the sums." On its face the Order does not contain language which directs the Trustee to collect the funds from Mr. Weber or the creditors. In fact until someone delivered the funds to the Trustee the creditors had control over their money and could have rescinded their offer to create a litigation fund. Due to the nature of the Trustee's question and the decision in *Zipkin*, which declares the court Order must speak for itself, the court finds that the Trustee was merely authorized to receive the creditors' funds and that, contrary to Peoples Bank's interpretation, the funds were not property of the estate which he had a duty to collect.

■ Peoples Bank further contends that the Trustee's failure to take possession of the creditors' litigation fund was due to the fact that he was the recipient of a personal loan in the amount of $22,000 (the trustee admits to having received $27,500) from Mr. Weber. Although in a supplemental memorandum Peoples Bank states that the Trustee "sold his soul and his office" for the loan the only actual harm alleged was that the loan prevented him from collecting the $13,880 from Mr. Weber. The court

has already determined the Trustee did not have a duty to seize the funds from the creditors or Mr. Weber and therefore the loan cannot be found to have influenced the Trustee in that regard. However the existence of the loan is certainly the basis of Peoples Bank's insistence on this Court's adoption of the "appearance of impropriety" standard and it is a perfect example of why the court has disdain for it.

Peoples Bank, in stridently righteous language, has claimed that the fact that the Trustee dealt with Mr. Weber who has been convicted of making false statements to a grand jury, and more recently of offering gratuities to a United States Attorney, totally corrupted the Trustee and undermined the creditors' confidence in him. Such an accusation seems ludicrous in light of the evidence adduced at trial which indicated no one enjoyed a closer relationship with Mr. Weber than Peoples Bank and its President, Mr. Huffman. It was Peoples who began its relationship with Mr. Weber two months before the Hartleys' filed for bankruptcy. It was Peoples who paid Mr. Weber $26,000 and authorized him to act as its agent. It was Peoples and Mr. Huffman who loaned money to Mr. Weber. And it was Peoples who had knowledge of and gave its approval to the Trustee's relationship with Mr. Weber until the Trustee sued the bank. To allow the Trustee to be removed on nothing more substantial than the "appearance of impropriety" would be to lend this Court's power to those who would seek to coerce trustee's into not performing their duties.

Apparently Peoples Bank has harbored that notion since January 13, 1982 when it sent a letter to the Trustee saying that the funds it advanced as part of the creditors' fund must be refunded if the Trustee instituted a lawsuit against it to recover monies paid to the bank by or on behalf of Hartley. The court disapproved of any such conditions by providing in its June 4, 1982 Order that when the Trustee accepted the creditors' fund it was with no strings attached. The court has no intention of permitting Peoples to achieve the same goal indirectly

by using the "appearance of impropriety" standard.

## TRUSTEE'S CONFLICT OF INTEREST

■ The second cause for removal asserted by Peoples claims that a conflict of interest arose as a result of the Trustee's ownership of stock in Peoples Bank as the trustee in the Larry Miller case. As the trustee for Miller, Mr. Derryberry became the owner of 21 shares of Peoples Bank stock pursuant to 11 U.S.C. § 541. Peoples Bank argues the conflict of interest began when as the trustee for Hartley, Mr. Derryberry sued Peoples. The Trustee contends that since Peoples Bank knew of the stock ownership and at least tacitly lent their approval to the situation, it is estopped from arguing conflict of interest two years later. The Trustee further contends that mere allegations of potential conflict are not sufficient to remove the trustee.

The court agrees with the Trustee who relies on *In re National Public Service Corporation*, 68 F.2d 859 (2d Cir.1934) which held after a certain creditor had worked hand in hand with the trustee for eight months without opposition that creditor was estopped from raising the issue of the conflict of interest. The court stated "Other creditors may be entitled to ask us to do this but we are not disposed to hear that complaint in the mouths of these appellants." *Id.* at 863. It is appropriate to hold Peoples Bank is estopped from arguing conflict of interest in this case because Peoples Bank was aware of the stock ownership question for approximately two years and it failed to raise an objection until the commencement of an action against Peoples Bank.

■ The court notes that the Trustee became the owner of the stock by operation of law. This is not the usual conflict of interest case where self dealing is involved. There has been no evidence presented that the trustee was personally enriched nor that the estate was harmed. There was some testimony that Peoples Bank stock was sold for $50 a share and was repur-

chased at $50 per share which indicates the value of the stock has not suffered. Although the time of those transactions is not certain there certainly was no testimony that indicated Peoples Bank stock declined as the result of the lawsuit. Of course as previously stated actual fraud or harm must be shown to establish cause for removal. Accordingly, not only is Peoples estopped from alleging conflict of interest they also failed to meet this Court's standard for removal.

### THE INSURANCE CHECKS

■ The third cause for removal centers around the Trustee's receipt of ten checks from the Midwest Insurance Company. Two of the checks were made payable solely to Mr. Hartley so the Trustee was able to cash and deposit them. However the other eight checks from Midwest listed Hartley and an additional payee. Peoples Bank claims the Trustee should be removed because he did not cause the third parties to endorse the checks and that those checks are now worthless since Midwest Insurance has collapsed.

Peoples Bank is laboring under the misconception that any proceeds due the estate have been lost as a result of Midwest's collapse. That assumption is erroneous because the insurer is Lloyds of London and it is they, not Midwest Insurance who must pay on the policies. The co-payees brought suit against Lloyds for sums far in excess of the amount of the checks offered by Midwest and the case is now in the District Court for the Northern District of Ohio. The Trustee is a party defendant in this proceeding, wherein the rights of all parties, including the trustee's, will be determined. Thus, there has been no loss to the estate of any interest it may have under the terms of the insurance policy.

The suggestion that the Trustee should have secured endorsements immediately on the checks so they could have been cashed before Midwest collapsed would have been harmful to the estate if it could have been done at all. First, it is unlikely the additional payees would have endorsed the checks because they were payable in amounts far less than the actual claims and to endorse the checks according to language on the back of the check was to relinquish all further claims. Secondly, if the checks were endorsed and the estate settled for a fraction of what it was entitled to it is clear the Trustee would have been attacked on those grounds. Under the circumstances it appears the Trustee properly carried out his duties in this matter and as such these actions cannot serve as cause for removal or the awarding of damages.

### THE ADMINISTRATIVE CLAIM FOR STORAGE COSTS

■ The fourth cause for removal concerns an administrative claim filed by the Freuhauf Trailer Corporation. The Trustee attempted to sell four trailers which Freuhauf held liens on from Freuhauf's lot. Freuhauf filed an administrative claim under § 503(b) for $3,500 for storing the trailers on its lot. Peoples Bank contends the Trustee should have taken possession of the trailers and avoided any expense to the estate. The Trustee's position at trial was that the issue is prematurely raised since the trailers have not all been sold nor the claim allowed.

The Trustee's argument is well taken. If any money becomes available to pay § 503(b) claims, the Trustee may object to this claim. It may be disallowed. On the other hand the trailers may sell for more than the amount of the lien and Freuhauf may seek storage costs under § 506(b). There are other possibilities but this Court in a removal case focuses only on actual fraud or harm which has not been demonstrated in this allegation. The mere act of filing an administrative claim does not cconstitute grounds for removal as alleged by Peoples Bank.

### TRUSTEE'S FAILURE TO PURSUE A PREFERENCE CLAIM

The fifth allegation of Peoples Bank is that the Trustee should be removed for failure to pursue a preference claim

against Richard C. Gottfried. The Trustee's response is that based on 15 years experience as a trustee and the advice of legal counsel a preference could not be proved and if it could the cost in time and expense would far outweigh any judgment granted.

The alleged preference involves two checks post dated July 8, 1981 and July 15, 1981 in the amount of $25,000 each. Both checks were payable to James Hartley from Safeway Truck Lines. The checks were endorsed by Mr. Hartley and sold to Mr. Gottfried in return for $45,000 on June 10, 1981. When Mr. Gottfried presented the checks for payment the bank refused to honor them.

On July 16, 1981 Mr. Gottfried received a letter from Rentar Industries (a parent company of Safeway Truck Lines) along with a $5,000 check representing an agreement that had been reached to provide for payment of the returned checks in ten installments. Mr. Gottfried received another check for $5,000 on July 29, 1981. The remaining eight installments were not made.

At trial the Trustee testified that he considered the possibility of filing a preference action against Mr. Gottfried but after weighing several factors he decided against it. One of the factors considered by the Trustee was that the checks were drawn on Safeway Truck Lines and not the debtor and if Safeway was liable enormous expense would be incurred investigating a claim against them. Coinciding with the fear of high investigative and legal costs is the fact the amount of the alleged preference is only $10,000. Another factor listed by the Trustee was the possibility that § 547(c) exception might apply. Finally the Trustee testified he used his 15 years experience as a trustee and the advice of counsel to reach the decision not to file a preference action against Mr. Gottfried.

█ It has not been alleged the Trustee was ignorant of the possibility of a preference action. Nor that he negligently missed a filing date. What Peoples Bank has really alleged is that because the Trustee knew of Mr. Weber's fee contract with Mr. Gottfried, he was afraid to sue and jeopardize Mr. Weber's fee. That argument doesn't hold water in light of the fact that Peoples Bank had a similar arrangement with Mr. Weber and that did not prevent the Trustee from suing Peoples Bank to recover preferential payments. Furthermore a suit by the Trustee against Mr. Gottfried would not affect Mr. Weber's interests. The standards for determining whether a trustee is liable in his official capacity or personally and the business judgment rule provide guidelines by which the Trustee's decision not to pursue a preference action against Mr. Gottfried can be evaluated. The Sixth Circuit Court of Appeals in *Ford Motor Credit Company v. Weaver*, 680 F.2d 451, 461 (1982) held:

> A bankruptcy trustee is liable in his official capacity for acts of negligence. (citations omitted) The applicable standard is the exercise of due care, dilligence and skill both as to affirmative and negative duties. (citation omitted) The measure of care, diligence and skill required of a trustee is that of 'an ordinarily prudent man in the conduct of his private affairs under similar circumstances and with a similar object in view.' (citation omitted) Mistakes in judgment cannot be the basis of a trustee's liability in his official capacity. (citation omitted) The failure to meet the standard of care, however, subjects the trustee to liability in his official capacity. (citation omitted) A bankruptcy trustee is liable personally only for acts willfully and deliberately in violation of his fiduciary duties. (citation omitted)

The court believes the Trustee did not willfully and deliberately breach his fiduciary duty but instead exercised his discretion and made a judgment based on his experience, advice of counsel, and the other factors he stated affected his decision.

█ The Court finds that the Trustee's action is analogous to a business judgment. The role of the court in applying hindsight to a business judgment was explained in *In re Curlew Valley Associates*, 14 B.R. 506, 513 (Bankr.D.Utah 1981) which stated "In

short, the court will not entertain objections to a trustee's conduct of the estate where that conduct involves a business judgment made in good faith, upon a reasonable basis, and within the scope of his authority under the Code." The court finds that the Trustee's decision not to pursue a preference action against Mr. Gottfried was not negligent or fraudulent but was based on his sound judgment after weighing all relevant factors and as such cannot be grounds for removal.

### TRUSTEE'S FAILURE TO RENT OR SELL DEBTORS' RESIDENCE

The sixth and final allegation by Peoples Bank is that the Trustee should be removed because he failed to rent the personal residence of the debtor. Peoples also contends that the Trustee not only failed to rent but compounded his transgression by not selling the house, and his opposition to an abandonment proceeding. Peoples Bank is seeking the fair rental value of $450 a month in damages. The Trustee had repeatedly conveyed the message that the debtor has no equity in the home and that while he opposed the abandonment, he would have agreed to a modified relief from stay.

The only reason the court can assume for such a misguided cause for removal is the plaintiff's lack of understanding of the bankruptcy process. The first mortgage holder, Diamond Savings who had the first and best lien on the property, and Peoples Bank which held the second mortgage should not look to the Trustee to manage or liquidate burdensome property of no benefit to the estate. However, the Trustee explained to the first mortgage holder that his purpose in objecting to abandonment was that if by some remote possibility the residence were to sell for more than the first and second mortgages, the estate would not be entitled to the proceeds, whereas with a relief from stay it would.

■ Attempting to demonstrate a duty to rent Peoples Bank cites 11 U.S.C. § 541(a)(6) which in pertinent part states:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located:

(6) Proceeds, product, offspring, rents, and profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

Section 541 describes what is property of the estate. If a rental property was owned by the debtor then the trustee has a right to collect the rents. § 541 does not create an affirmative duty to force the debtors to pay rent or evict them to find someone who can. Needless to say Peoples Bank has not provided any legal authority for the Trustee's duty to rent or sell the debtors' residence, where the estate has no equity, which would inure solely to the benefit of the secured creditors.

■ The Trustee in his pretrial brief listed all of the problems that would be incurred in evicting the debtors and renting the residence. The court does not need to dwell on those details because it is sufficient to state the Trustee did not have a duty to rent or sell the debtors' residence where there was no equity for the estate. Accordingly the court finds Peoples Bank has not shown cause for removal or the awarding of damages on this ground.

### CONCLUSION

The court finds that on all six grounds Peoples Bank has failed to show actual fraud or harm to the estate. Instead Peoples exhibited a tactical maneuver which initially was designed to pressure the Trustee not to sue to recover preferential payments, but once that strategy was foreclosed the primary goal appeared to be revenge. It is not surprising that great animosity was generated between parties who had worked together only to find themselves adversaries in court. The court understands that Peoples Bank resented being sued after they offered to contribute to a litigation fund. But whatever the reasons for hard feelings in this case the court

is cognizant that it is setting a standard to be applied to trustees in the future and it believes that they should not be subject to the threat of tenuous and specious claims for removal. By adhering to the actual fraud or harm standard creditors are not left with an unsurmountable task in trying to remove a trustee. They are merely required to rise above groundless accusations and prove that the trustee has actually engaged in wrongdoing or harm to the estate. Failure to use that test leaves innocent trustees open to the threats of unscrupulous parties and jeopardizes the orderly administration of the estate by the disruptive process of removing and appointing trustees.

In light of the foregoing, it is hereby,

ORDERED that the plaintiff's complaint seeking damages be, and it hereby is dismissed with prejudice. It is further,

ORDERED that the motion of The Peoples Banking Company seeking removal of the trustee be, and it hereby is, denied with prejudice.