856 F.2d 196
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee
v.
Quentin M. DERRYBERRY, II, Defendant-Appellant
 Nos. 87-3458, 87-3638.
 United States Court of Appeals, Sixth Circuit.
 Aug. 24, 1988.
 
 Before BOYCE F. MARTIN, Jr. and WELLFORD, Circuit Judges and JAMES H. JARVIS, District Judge.*
 PER CURIAM.
 
 
 1
 Quentin M. Derryberry, II, the defendant, appeals his jury conviction for embezzlement of bankruptcy funds and perjury. We have reviewed the defendant's numerous assignments of error and find those relating to his embezzlement conviction sufficient to merit the reversal of that conviction. The conviction and sentence for perjury is, however, affirmed.
 
 
 2
 This case has its origins in September 1981, when James Hartley, owner of Hartley Trucking Company, filed for bankruptcy. The trustee for this bankruptcy was Quentin M. Derryberry, II, the defendant. Derryberry worked closely with an individual whose name was Merle Weber. For reasons we have not fathomed, they reached the conclusion that there may be hidden assets available for creditors in the Hartley bankruptcy.
 
 
 3
 In November of 1981, the defendant and Mr. Weber met with attorney George Ferstle to discuss the formation of a creditors' fund. This fund would be used to pay for an attorney for the Trustee and to defray investigative costs incurred in finding the hidden assets. The fund would be created through contributions secured from the creditors. Among the creditors expected to contribute were Mid-West Insurance Agency, the Peoples Banking Company of McComb, and C. Richard Gottfried.
 
 
 4
 On December 16, 1981, the defendant held a creditors meeting to discuss the establishment of this creditors' fund. The defendant indicated that Weber would serve as an investigator and they would work together. The defendant informed them that he had retained Ferstle as his attorney. The defendant also informed the creditors that he needed approximately $75,000 to pursue the necessary litigation. After the meeting, Weber contacted several of the Hartley creditors. Several of these creditors gave checks to Weber which were made out to the defendant. On December 18, 1981, Mr. Gottfried gave Weber a $2,000 check made out to the defendant to be used for the creditors' fund. The check contained a notation which read "Expense fund--Hartley recovery." On January 8, 1982, Mid-West gave Weber a $5,000 check made payable to the defendant for the creditors' fund. After receiving the check from the owner of Mid-West, he gave it to the defendant who endorsed it and deposited it in his personal checking account at the Metropolitan Bank of Lima, Ohio before spending it for his own personal use.
 
 
 5
 Other creditors also made contributions with checks payable to the defendant. In January of 1982, Weber endorsed these checks "Quentin Derryberry II, by Merle C. Weber, by agreement; Merle C. Weber." The checks were then deposited into Weber's personal checking account at the Peoples Bank. The $2,000 check received from Mr. Gottfried was treated in a similar manner.
 
 
 6
 In January of 1982, the chief executive officer of the bank asked Weber about the strange endorsements. Weber replied that he and Derryberry had agreed to endorse the checks in this manner. On January 13, 1982, Mr. Huffman called Derryberry and told him about the endorsements Weber was making on the checks contributed by various members of the creditors' fund. Derryberry acknowledged that he had agreed to these endorsements. On February 22, 1982, the defendant was again informed by Mr. Huffman of these endorsements and again stated that there was no cause for worry.
 
 
 7
 On March 22, 1982, Mr. Drake from Peoples Bank called the defendant and informed him that checks from creditors were being endorsed by Weber. This time, however, defendant claimed he was not aware of this and that he would discuss it with Weber. The defendant promised to get back to Mr. Drake. When he did not do so, Mr. Drake called Ferstle on March 30, 1982. Mr. Drake told Ferstle that Weber was writing checks to Derryberry which were being deposited to the account of Derryberry's wife's business. This information was relayed to the defendant. On April 16, 1982, Drake and Huffman went to Ferstle's office to speak with Derryberry about the endorsements. Derryberry refused, however, to meet with them.
 
 
 8
 On January 14, 1982, Mr. Huffman called the defendant to advise him that the bank had approved a contribution to the creditors' fund. Ferstle apparently advised defendant not to accept the contribution if there were conditions attached to it. On February 26, 1982, Mr. Huffman gave Weber a $3,500 cashiers check made payable to defendant. The check contained the notation "For PBC-Creditors' Group." Weber gave the check to the defendant who endorsed it, deposited it into his personal checking account and spent the money for his own personal use.
 
 
 9
 In April of 1982, Ferstle prepared a document entitled Application for Instructions and Advice which sought guidance from the bankruptcy court concerning the handling of the creditors' fund money. The Application included an exhibit which listed each contribution by source and amount. On May 27, 1982, Mr. Ferstle informed Judge Krasniewski that between $12,000 and $13,000 had been collected from the creditors and was being held by Weber in escrow awaiting instructions from the bankruptcy court. The defendant was in attendance at this hearing, during which hearing Mr. Drake stated that the Peoples Bank had made an unconditional contribution to the creditors' fund. The court made it clear, in the defendant's presence, that Weber was to have no contact or participation in this fund whatsoever.
 
 
 10
 On June 4, 1982, the bankruptcy court issued its formal order concerning the creditors' fund. The order included a listing of the creditors and their contributions. The list included the Peoples Bank's contribution of $3,500 and Mid-West's contribution of $5,000. A copy of the order was sent to the defendant.
 
 
 11
 From the time of the court order until January of 1984, defendant did nothing to acquire the money from Weber. Only after questions began to be raised by some of the creditors about what had happened to their contributions did the defendant make any effort to get the money returned from Weber. On November 30, 1983, Mr. Gottfried sent a letter to the defendant that specifically mentioned his contribution of $2,000. He received no response. In November 1984, the Peoples Bank filed a motion to remove the defendant as Trustee. Shortly thereafter, defendant filed suit against Weber seeking the money from the creditors' fund. The defendant informed the court that the money "was property of the estate." The court granted the defendant's motion.
 
 
 12
 On September 7, 1983, defendant was interviewed by a special agent with the Federal Bureau of Investigation. The defendant informed Agent Downey that he had received approximately $20,000 in loans from Weber. Defendant also informed the agent that Weber had given him a $5,000 check from Mr. Bundschuh but that he had returned the check to Weber because Bundschuh was a creditor in the Hartley bankruptcy.
 
 
 13
 In April of 1985, defendant testified before Judge Krasniewski at a hearing on the suit instituted by the Peoples Bank to remove him as trustee of the Hartley estate. He testified at that hearing that he never had possession of any of the $13,880 which constituted the creditors' fund. Specifically, after stating that "I'm familiar with the figure that is $13,880," he was asked whether he had "ever had possession of any of that $13,880?" His answer, under oath, was "No Sir." It was this testimony that formed the basis for the perjury count on which he was convicted.
 
 
 14
 There was also an exchange during the defendant's April 26, 1985, testimony to the grand jury in which he stated that he "had not been informed at any time by anyone factually, or even have a suspicion," that Mr. Weber had endorsed his name on the back of any checks. This testimony formed the basis of a second perjury count. The jury, however, was unable to reach a unanimous verdict on this charge.
 
 
 15
 On August 6, 1986, a four count indictment was handed down against the defendant. Count two of the indictment charged that the defendant in January and February 1982 embezzled property belonging to the estate of a bankrupt in violation of 18 U.S.C. Sec. 153. Count one charged him with conspiring with Merle C. Weber to do the embezzling, in violation of 18 U.S.C. Sec. 371. Counts three and four charged him with perjury as described above. On January 30, 1987, the jury returned verdicts of guilty on counts two and three and not guilty on count one. The jury came to no agreement on count four. On May 4, 1987, a judgment of guilty on counts two and three was entered by the trial court.
 
 
 16
 Defendant's first argument is that because the money he is charged with embezzling was not "property of the estate," he cannot be guilty of violating 18 U.S.C. Sec. 153.[1] Defendant argues that only if the bankrupt debtor had an interest in the property at the beginning of the bankruptcy proceedings can the property be said to be "property belonging to the estate of a debtor" within the meaning of 18 U.S.C. Sec. 153. We disagree. We believe that 11 U.S.C. Sec. 541(a)(7), which defines property belonging to the estate, makes clear that the estate may acquire an interest in property after the commencement of the case. Thus, we believe that money which has been given to the estate for the purpose of funding litigation by a Trustee on behalf of that estate is property of the estate under the bankruptcy laws. We are unpersuaded by defendant's argument that the definition of "property of the estate" in Sec. 541 is not determinative of the definition of the virtually identical language continued in Sec. 153. If the purposes of the bankruptcy laws in general are to protect creditors by ensuring equal distribution of the property of the estate among the creditors, the specific purpose of Sec. 153 is to further protect the creditors by prohibiting the Trustee, who is supposed to be acting on behalf of the creditors, from embezzling any of that property for his own personal gain.
 
 
 17
 Defendant's second argument is that he was wrongfully convicted of perjury on the ground that his testimony that he had never had possession of "any of that $13,880" was in response to an ambiguous question. Defendant would have us believe that he was unclear to what "that $13,880" was in reference to. His testimony at the April 24, 1985, hearing belies that contention. Immediately preceding his testimony that he had never had possession of any of that $13,880, the defendant testified that "I am familiar with the figure that is $13,880." The cases upon which defendant relies offer him no support. In contrast to the cases cited by defendant, the defendant's testimony here was literally false. We flatly reject defendant's argument that perjury and attempts to mislead a court may be excused by later testimony in response to another question, where he admitted having received a $3,500 check from the Peoples Bank.
 
 
 18
 Defendant's third argument is that the trial court erred in ruling that his allegedly perjurious declaration was material as a matter of law. As defendant recognizes, the question of materiality in a perjury case is one of law, for the court to decide. United States v. Richardson, 596 F.2d 157, 165 (6th Cir.1979). Defendant argues that the government failed to present any evidence that would enable the district court to find that the defendant's declaration was material. The government, however, did submit to the district court the June 20, 1985, Order of Judge Krasniewski. Thus, the court was informed as to what issues were involved in the bankruptcy hearing. Accordingly, we believe the district court could conclude from this evidence and the perjurious statements that the statements were material. The form of the evidence presented is not as important as whether the evidence is sufficient to inform the court as to the materiality of the testimony. The introduction of a complete transcript of the relevant proceedings is not the exclusive method of proof. See United States v. Bell, 623 F.2d 1132, 1135 (5th Cir.1980).
 
 
 19
 The defendant's most persuasive argument is that the final order and judgment of the bankruptcy court in United States ex rel. Peoples Banking Company of McComb v. Quentin M. Derryberry II, Trustee, (In re Hartley), 50 B.R. 852 (Bankr.N.D.Ohio, W.D.1985), where it found that the funds described in Count II of the indictment were not "property belonging to the estate of [the] debtor," collaterally estops or acts as a res judicata bar to the elements charged in Count II of the indictment. Id. at 860. We have reviewed and considered the various orders of the bankruptcy court and agree with defendant that they appear inherently contradictory on the very issue at the core of Count II of the indictment. The June 20, 1985, Order holds that "the Trustee was merely authorized to receive the creditors' funds and that, contrary to Peoples Bank's interpretation, the funds were not property of the estate which he had a duty to collect." Because the United States was a name party in this bankruptcy matter, whose interests were adequately aligned with and represented by Peoples Bank on this issue, we believe the United States was not free to relitigate this issue and make the charge found in Count II. Because this is a criminal case, it is a matter of constitutional mandate that such judicial orders and determinations be strictly interpreted when they are apparently dispositive on issues central to a criminal charge. We recognize that Bankruptcy Judge Krasniewski had issued other orders implying a different conclusion on the critical question of whether these funds belonged to the debtor's estate, but fundamental fairness requires that the benefit of the doubt be given to a criminal defendant.
 
 
 20
 Accordingly, we reverse the embezzlement conviction charged in Count II of the indictment and affirm the perjury conviction and the sentence.
 
 WELLFORD, Circuit Judge, concurring:
 
 21
 I concur fully in the per curiam opinion, and write only to emphasize our puzzlement about Bankruptcy Judge Krasniewski's conflicting and inexplicable actions in the underlying bankruptcy case. I cannot fathom why Judge Krasniewski did not discharge the defendant as trustee at an earlier stage in the proceedings. Moreover, I do not understand why he would declare the creditors' fund not to be property of the bankruptcy estate on June 20, 1985 after having declared the exact opposite on several previous occasions. This latter action prompts us to set aside the conviction charged in count two of the indictment.
 
 
 
 *
 The Honorable James H. Jarvis, United States District Judge for the Eastern District of Tennessee, sitting by designation
 
 
 [1]
 18 U.S.C. Sec. 153 provides:
 Whoever knowingly and fraudulently appropriates to his own use, embezzles, spends, or transfers any property or secretes or destroys any document belonging to the estate of a debtor which came into his charge as trustee, receiver, custodian, marshal, or other officer of the court, shall be fined not more than $5,000 or imprisoned not more than five years, or both.